FILED

DEC 12 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Michael J. Novak; Christina Bugelas Novak; ) | United States District Court |
| T.N., By her Parent and Next Friend, Michael ) | Northern District of Illinois |
| J. Novak; ) | Eastern Division |
| Plaintiffs, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | 13cv8861 |
| Levenfeld Pearlstein, LLC; Lieberman ) | Judge Milton I. Shadur |
| Management Services, Inc.; Donna Weber; ) | |
| Board of Directors, The State Parkway ) | Magistrate Jeffrey T. Gilbert |
| Condominium Association; ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiffs, Michael J. Novak (hereinafter "MJN"), Christina Bugelas Novak (hereinafter "CBN") and T.N., by her Parent and Next Friend MJN, (hereinafter collectively referred as "Novak Family"), allege as follows:

### Introduction

1.     This is a civil action by the Novak Family against Defendants Levenfeld Pearlstein, LLC, (hereinafter "LP"); Lieberman Management Services, Inc., (hereinafter "LMS"); Donna Weber ("DW"); and Board of Directors, The State Parkway Condominium Association (hereinafter "BOD"); under the Fair Housing Act (hereinafter "FHA"), as amended 42 U.S.C. § 3601 *et seq.,* and state law claims, to seek declaratory, monetary, and injunctive relief against Defendants LP, LMS, DW and BOD for their *continuous* discriminatory and retaliatory conduct against the Novak Family ever since MJN filed a two-count fair housing charge with the United States Department of Housing and Urban Development (hereinafter "HUD") in January 2007, in violation of federal FHA, and related state laws. In addition, Defendants LP, LMS, DW and BOD tortiously inflicted emotional distress upon the Novak Family; and Defendants LP, LMS, DW and BOD violated the FHA by discriminating against the Novak Family in the provision of

services and facilities at the Subject Property, and coercing, intimidating, threatening, or interfering with the Novak Family on account of MJN having exercised or enjoyed any right granted or protected by Section 3604 of the FHA. The Novak Family seeks an injunction from this Court ordering Defendants LP, LMS, DW and BOD to: a) allow the Novak Family's service animal to accompany her handler(s) in the common areas; b) rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel; c) provide CART services and CART transcripts upon request by MJN and/or CBN; and d) provide other reasonable accommodations or modifications that may be necessary. The Novak Family also seeks compensatory damages, attorney's fees, rescission of fines and release of lien, and an order that Defendants LP, LMS, DW and BOD undergo FHA and disability awareness training, and other appropriate relief.

## Jurisdiction And Venue

2.     Jurisdiction is conferred on this Court by 42 U.S.C. § 3613 and by 28 U.S.C. § 1331. Supplemental jurisdiction is over the claim in Counts V through XII alleging Intentional and Negligent Infliction of Emotional Distress under Illinois Law, as these claims arise under the same case or controversy, as required by 28 U.S.C. § 1367.

3.     Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 3612(o)(3) because the events giving rise to Plaintiffs' claims occurred in the Northern District of Illinois, Eastern Division, and they concern or otherwise relate to real property located in Northern District of Illinois, Eastern Division.

## Parties And Property

4.     At all times hereinafter mentioned, Plaintiff, Michael J. Novak, was and still is co-owner resident at 1445 North State Parkway, Unit #205, Chicago, Illinois, 60610. Plaintiff,

2

Michael J. Novak, is a citizen of the United States. Plaintiff, Michael J. Novak, has a severe-to-profound bilateral congenital sensorineural hearing loss, which means he is handicapped within the meaning of 42 U.S.C. § 3602(h).

5.     At all times hereinafter mentioned, Plaintiff, Christina Bugelas Novak, was and still is co-owner resident at 1445 North State Parkway, Unit #205, Chicago, Illinois, 60610. Plaintiff, Christina Bugelas Novak, is a citizen of the United States. Plaintiff, Christina Bugelas Novak, has profound bilateral acquired (@ age 18 months) sensorineural hearing loss, which means she is handicapped within the meaning of 42 U.S.C. § 3602(h).

6.     Plaintiffs, Michael J. Novak and Christina Bugelas Novak, due to their deafness, use a service animal that is "individually trained to alert to the specific sounds needed by her handler(s)." The Novak Family acquired Hera, their assistance dog, on or about February 3, 2007.

7.     At all times hereinafter mentioned, Plaintiff, T.N., was and is still is a minor child of Plaintiffs MJN and CBN, and was and still is a resident at 1445 North State Parkway, Unit #205, Chicago, Illinois.

8.     At all times hereinafter mentioned, Defendant, Levenfeld Pearlstein, LLC, a law firm, is a limited liability corporation incorporated under the laws of Illinois, and having a main office at 2 North LaSalle Street, Suite 1300, Chicago, Illinois, 60602. Defendant, Levenfeld Pearlstein, LLC, according to its website, has 9 (nine) practice areas, including a Homeowners Association Group that represents cooperatives, condominium and homeowner's associations in all aspects of governance and litigation, including declaration and bylaw amendments and enforcement, assessment collections, owner bankruptcies and foreclosures, evictions, injunctions, covenant enforcement and developer and construction defect litigation. www.LPegal.com.

3

9.     At all times hereinafter mentioned, Defendant, Lieberman Management Services, Inc., a property management company that is incorporated under the laws of Illinois, and having a main office at 25 Northwest Point, Suite 330, Elk Grove Village, Illinois, 60007. Lieberman Management Services, Inc., according to its website, serves more than 40,000 residents in over 200 condominium Associations, including high-rises, sprawling multifamily developments and cooperatives. www.LMSmanagement.com.

10.    Defendant, Donna Weber, participates in the management, operation and/or rental of dwelling units at The State Parkway Condominium Association, located at 1445 North State Parkway, Chicago, Illinois, 60610 (the "Subject Property"). Since at least September 4, 2007, Defendant Weber has been an employee of Defendant LMS and in the course of that employment, she engages in the management, operation, and/or rental of dwelling units at the Subject Property. Concurrently, Defendant Weber has also been an agent of Defendant The State Parkway Condominium Association, and in the course of that agency, she engages in the management, operation, and/or rental of dwelling units at the Subject Property.

11.    At all times hereinafter mentioned, Defendant, The State Parkway Condominium Association (hereinafter "Association") is an Illinois Not-for-Profit Corporation with its registered agent's address at 2 North LaSalle St., Suite 1300, Chicago, Illinois, 60602; and its managing Board of Directors, is responsible for the overall administration of the Subject Property's common elements and Association's affairs in accordance with federal, state and local laws. Defendant BOD is responsible for the actions of Defendant LMS, which, since April 2006, has maintained an on-site property manager at the Subject Property, which consists of one high-rise building and approximately 159 units.

4

12. The 159 units at Subject Property are dwellings within the meaning of 42 U.S.C. § 3602(b).

## Factual and Legal Background

13. On or about January 3, 2007, MJN engaged in a protected activity by filing a two-count fair housing charge with HUD, 2007 CH 1965, against Defendant BOD.

14. On September 4, 2007, the parties reached an agreement as to the terms of a pair of Settlement Agreements after the Illinois Department of Human Rights (hereinafter "Department") had conducted a conciliation session. It was also DW's first day at the Subject Property.

15. On or about September 5, 2007, which was DW's second day in her job at the Subject Property, DW threatened to write up MJN for allegedly taking Hera on the passenger elevator instead of the service elevator, which is a violation of Association's Rules and Regulations because residents with pets must use the service elevator provided the service corridor is accessible. However, if the service elevator is unavailable, residents may take their pets on the passenger elevators. Notwithstanding, due to safety concerns MJN and CBN received an exception to this policy if the service corridor was inaccessible or for situations other than ingress and egress. In any event, MJN informed DW that the service elevator was actually unavailable. However, DW was explicitly hostile to MJN and told him that she would write him up for violating Association's rule. Also at this time, Nicole Washington, DW's boss at LMS, made repeated references to the concluded HUD/Department litigation which MJN interpreted their actions are in retaliation for the charge that was filed. DW, LMS, BOD and LP have since been unfair and uncooperative to the Novak Family.

16. On or about September 10, 2007, two Association employees directed MJN and Hera through the main lobby while contractors were moving large construction equipment into the

5

building. While MJN and Hera were walking toward the passenger elevator, DW ran out from her office and began harassing MJN about not using the service elevator (even though it was apparent that DW again had not checked to see if the service elevator was unavailable). However, DW threatened to write up MJN again even though he had committed no violation of Association's rules.

17.     Also on September 10, 2007, MJN wrote to DW saying, *"This is the second time this week [DW] threatened to write [MJN] up, let alone complain without checking the facts. To be clear, no one is expected to use the service entrance/exit if people are moving in via the loading dock. Please refrain from threatening [MJN]. Just write [MJN] up if [DW] think [MJN] made [MJN's] first rule violation at [Subject Property]."* MJN added, *"[MJN] wish[es] to note that ever since [DW's LMS supervisor] threw up (sic) litigation in [MJN's] face on your first day at work last week, [DW has] been biased against [MJN]."*

18.     On or about September 11, 2007, MJN and CBN received a warning letter, dated September 10, 2007, from LMS alleging MJN took Hera through the main lobby improperly on September 5, 6 and 7, 2007. In addition, it was also alleged Hera had urinated on the floor of the front lobby while leaving the building.

19.     On or about September 12, 2007, MJN and CBN requested a hearing pursuant to Association's Rules and Regulations as well as the instructions in the September 10, 2007, letter from LMS to dispute each of the alleged violations since they were patently false and DW knew it. MJN and CBN also requested reasonable accommodation in the form of Communication Access Realtime Translation (hereinafter "CART") services (which would make a real-time transcript of the proceedings so MJN and CBN could more easily follow along), as well as access to Association's security video so all parties can confirm the events in question. MJN was

6

certain that the relevant security videotape would exonerate MJN and CBN of any wrongdoing, and prove illegal bias on the part of DW. Defendants inexplicably rejected all of the requested items.

20.    On September 13, 2007, DW orally admitted that MJN and CBN did not violate any of Association's Rules and Regulations, and apologized to MJN about not understanding Association's pet rules, and as such MJN and CBN presumed the warning was now withdrawn. MJN relayed this information to his attorney.

21.    On or about September 18, 2007, MJN had a relay telephone conversation (which records conversations) with DW. MJN inquired about the status of the warning and hearing, in light of DW's oral apology. DW said, *"I do not know."* MJN later said, *"[MJN and CBN] wish to contest the warning, especially in light of [DW's] apology. [MJN and CBN] stand by [their] statements. BUt (sic) we will still like to review the (security) video so we can adequately defend ourselves."* DW said, *"[DW] have really nothing more to say at this point at the advice of [LP] [DW] (sic) have been told not to communicate any further."*

22.    On or about October 19, 2007, LP sent a letter to MJN and MJN, saying there would not be a hearing related to the September 10, 2007, "warning letter." LP also said, *"[MJN and CBN] received a warning letter from management [on September 10, 2007] to stop certain conduct. Under Section 18.4 of the [Illinois] Condominium [Property] Act, the BOD has elected at this time not to convene a hearing on this conduct. [MJN and CBN] are to follow the directions of management regarding the content of the warning letter. The BOD has no obligation to hold a hearing at this time because it is not presently considering the levy of a fine. The issue of CART services and any reasonable accommodation is not related to, nor triggered*

7

*by, the warning notice. The BOD will not convene a hearing unless and until it contemplates the levy of a fine or other specific legal action."*

23. On or about October 22, 2007, MJN and CBN emailed LP saying MJN and CBN were glad Association has decided not to follow up on the warning letter, as the warning was without merit and MJN and CBN disputed the allegations in the letter. MJN and CBN also warned against further harassment of the Novak Family's service animal by Association regarding improper and illegal restrictions being placed on Plaintiffs MJN and CBN. Plaintiffs, MJN and CBN, reminded LP that the Novak Family's service animal was already allowed to accompany her handler(s) in all other common areas. LP immediately emailed back saying, *"[MJN and CBN] must observe the pet rules like every owner and resident in the building."*

24. At the October 22, 2007, BOD's meeting (during which CART services were provided), MJN asked BOD a question about Association losing $12,461 in Scavenger Rebates from the City of Chicago for calendar years 2004 and 2005 per the footnotes in the 2006 Audited Financials. BOD President Santangelo angrily refused to answer MJN's two questions saying, *"because [BOD] don't have the paperwork in front of us, put [MJN's] question in writing and [BOD] will answer it within 30 days."*[1] MJN offered to give Santangelo MJN's copy (of the paperwork) and told Santangelo that MJN had already put these questions in writing." Santangelo responded saying, *"If [MJN] didn't receive a response, the BOD felt it was not necessary to respond."* Near the end of the meeting, MJN said he had an announcement to make but Santangelo interrupted and said, *"Do the Homeowners want to hear him?"* Many homeowners said yes, but one owner, Maurine Bovey, said, *"[She'd] like MJN to sit down and*

---

[1] Defendant BOD generally meets in January, March, May, July, September (very brief and following Annual Meeting of Unit Owners) and October of each year. Unit owners have their annual meeting in September.

*be quiet. MJN has already caused enough problems and wasted so much money and people of this Association's time and if [MJN] had any sense of moral embarrassment [MJN] would stick to his unit."* MJN was not allowed to speak.

25.     On or about October 23, 2007, MJN emailed LP complaining about DW harassing MJN the past two days with questions about the Novak Family's service animal. DW told MJN that she was asking these questions on behalf of LP. MJN informed LP that, effective immediately, the Novak Family's service animal would accompany her handler(s) in all common areas, including the main lobby, as was done in February 2007.

26.     On or about October 26, 2007, MJN and CBN received an email from LP, which in part stated: *"It appears that recent events indicate that there is a substantial misunderstanding regarding [MJN's] interaction with management and [MJN's] conduct in the common areas of [Subject Property]. In an effort to avoid another round of litigation which is not in anyone's interests, [LP] would like to meet with you personally in the [Subject Property's] management office on October 29, 2007, at 6:00 p.m."*

27.     On October 29, 2007, MJN met with LP and DW as well as BOD members Santangelo, Dieckhaus, Marta at LP's request in DW's office. After LP and others in attendance spoke to MJN in a *threatening* tone, MJN gave LP a concise list of what MJN wanted (some of which had been requested and/or previously granted): a) the right for Novak's Family service animal to accompany her handler(s) in all common areas; b) certain financial records pursuant to Article 6.01 of the Declaration (which Association stopped responding to MJN's legitimate requests for records of Association since DW was hired, not to mention LP inexplicably rejected); c) the annual financial statements within 90 (ninety) days after the end of the fiscal year (which were being distributed more than 5 (five) months late); d) an instruction to BOD

9

members, particularly Sokoloff, not to take photos of T.N.; e) the ability to communicate with
DW and vendors by email (which was inexplicably denied to MJN), f) the same right as other
unit owners to watch television in the exercise room while exercising (multiple work orders to
fix the closed captioning have been submitted by LMS including one that is more than 11
(eleven) months old); and g) to allow the doorman to return to opening the gated stairs for
residents. LP said they didn't have a problem with MJN's list except for the first item, but they
had the following main points: a) despite the fact the Novak Family's service animal had been,
since March 2007, allowed to accompany her handler(s) in the common areas, their service
animal now had to follow all of the Rules and Regulations "pursuant to the Settlement
Agreements." LP said if MJN's attorney disagrees, to have his attorney contact LP. At this time
LP handed MJN a stack of service animal cases for MJN to give his attorney (even though both
LP and MJN's attorney exchanged letters regarding the service animal issue back in March
2007); b) LP had a concern about MJN making "too many requests for information." MJN, a
dual accounting and finance professional, politely reminded LP that: i.) MJN was the one who
found the gross material errors in Association's budgets and financial statements, and ii.) MJN's
requests are actually seasonal in nature as the audits and budgets are completed just once a year,
and the former was issued more than 5 (five) months late; c) LP said the BOD has had a "long
running problem" with noise coming from MJN and CBN's unit. MJN told LP that this was the
first time MJN was hearing about it, and reminded them that both Association's Declaration and
Bylaws and Association's Rules and Regulations actually require the complaining unit owner to
attempt to resolve complaints informally with the target resident prior to making a formal
complaint. MJN informed LP that Hera is actually never left home alone, except during
inclement weather but never for more than 10 (ten) minutes; d) LP said they were unaware BOD

10

refused to answer MJN's questions at the last BOD's meeting. BOD, on the other hand, said MJN's conduct was appalling. MJN told LP that MJN has the videos to prove MJN is telling the truth; and e) LP said, effective immediately, all residents will be banned from entering DW's office unless in the event of an emergency. At the conclusion of the meeting, MJN asked LP for a letter summarizing what they said at the meeting. LP said they would.

28.     On October 30, 2007, LP, as promised, sent MJN and CBN a letter which provided in part: a) a denial of MJN's request for the Novak Family's service animal to accompany her handler(s) in all common areas; b) agreement to provide the requested financial statements and supporting details for the 2008 Proposed budget, including a commitment that the BOD will attempt to distribute and annual accounting within 90 days after the fiscal year; c) an agreement to instruct BOD members not to take photographs of MJN's family; d) denial of the request to communicate with management via email (like other residents); e) agreement to allow MJN to participate during the Homeowners' Forum at BOD's meeting (like other unit owners); f) denial of MJN's request to have doorman open the south perimeter gate (so the Novak Family can resume taking the stairs to their unit on the second floor); and g) an agreement to look into the television issues (fix closed captioning) in the exercise room. LP also wrote that MJN must stay out of DW's office. DW, however, later told MJN that he was not banned from her office. Upon information and belief, LP changed some of its commitments after they talked to the BOD immediately after MJN left the October 29, 2007, meeting.

29.     On November 2, 2007, MJN's attorney wrote a letter to LP and made it clear that *"The timing of [BOD's] decision to newly complain about the [service] dog is suspect, as it appears to be in retaliation for the resolution reached in the case filed with [Department]. Under the [FHA], it is "unlawful to ... interfere with any person... on account of his having*

11

exercised or enjoyed...any right granted by section... 3604" of the Act." 42 U.S.C § 3617. By raising the issue of the dog post-settlement of the [Department] case, an issue that lay dormant for some seven months, and one that looked to be resolved, [BOD] has arguably violated the [FHA]." Also in this letter MJN's attorney reiterated his request that BOD permit the Novak Family's service animal in the common areas as a reasonable accommodation. The letter also clarified the exception of keeping Hera out of the main lobby when the service elevator is unavailable. Finally, also included in the letter is a reminder to LP that "The Settlement Agreement itself requires that Association provide reasonable accommodations to residents, with no exception made with respect to MJN." LP Legal, once again, did not respond to this letter, which is tantamount to rejection. However, Defendants backed down and allowed the Novak Family's service animal to accompany her handler(s) in the common areas except for the main lobby during ingress and egress.

30.     On or about March 28, 2008, Defendants filed Verified Complaint for Injunctive and Declaratory Relief in Circuit Court of Cook County, Chancery Division, against MJN, falsely claiming MJN a) harassed DW through excessive emails, telephone calls and correspondence, which amounted to a "consistent interruption of [DW's] workday" by sending her "an average of 4-6 emails and letters per week raising various issues including, but not limited to, requesting Association documents, critiquing BOD decisions, demanding accommodations for [Novak Family's] alleged service dog and asking for specific information regarding the BOD's capital expenditures."

31.     On or about March 31, 2008, MJN's attorney received correspondence, dated March 28, 2008, from LP refusing to permit the Novak Family's service animal in the common areas as a reasonable accommodation, effectively revoking a reasonable accommodation that had been in

12

place since February 2007. In the letter, LP reiterated, *"In October 2007, [LP] specifically instructed MJN not to take the guide dog in [the common areas.]"*

32.     At the April 1, 2008, Emergency Hearing in Circuit Court of Cook County, MJN produced logs of telephone calls and emails to the court to refute Defendants' false claim about MJN's emails and telephone calls. In addition, MJN informed the Court that Defendants, since at least the conclusion of the HUD Complaint in September 2007, were largely not responding to MJN's legitimate requests for records of Association. Because of MJN's immediate Answer, the Court limited Defendants' Emergency Motion to just MJN staying out of DW's office. (A copy of the logs presented in Court is attached as "Exhibit A").

33.     On or about April 30, 2008, MJN filed a Verified Answer to Defendants' Verified Complaint for Injunctive and Declaratory Relief against MJN, denying all substantive allegations of wrongdoing. In addition, MJN's Answer included 7 (seven) affirmative defenses against BOD, which included, among other things, allegations MJN was retaliated for having asserted his rights under the FHA and the Illinois Human Rights Act in a prior HUD Complaint against BOD.

34.     On November 2, 2009, MJN received a First Amended Verified Complaint for Injunctive, Declaratory and Other Relief, including the Sale of MJN and CBN's home. The amended complaint and motion for preliminary injunction were filed and/or verified by the Defendants. The amended lawsuit falsely alleged that MJN: a) requested too many documents and other materials; b) harassed management; c) harassed BOD members and disrupted BOD's meetings; d) violated pet rules and regulations; e) harassed Association staff members; and f) failed to cease inappropriate behavior. And the motion for preliminary injunction demanded the Cook County Circuit Court abolish the rights of unit owner MJN.

13

35.     On or about November 25, 2009, MJN filed his Verified Answer to Defendants'
Verified Complaint for Injunctive and Declaratory and Other Relief denying all substantive
allegations of wrongdoing. In addition, MJN's Answer again included 7 (seven) affirmative
defenses, which included the allegation MJN was retaliated for having asserted his rights under
the FHA and the Illinois Human Rights Act in a prior HUD Complaint against BOD. Moreover,
MJN filed a detailed Affidavit in Opposition Thereof and provided an avalanche of evidence
refuting Defendants' claims against MJN.

36.     On April 26, 2010, Defendants and MJN "agreed" to have an interim order
(hereinafter "Agreed Order") entered in Circuit Court pending final resolution at trial, which
severely restricted MJN's rights as a unit owner/resident.

37.     On October 29, 2010, MJN and CBN filed a timely complaint with HUD, alleging that
BOD: a) discriminated against Plaintiffs MJN and CBN on the basis of disability by failing to
permit reasonable accommodations, and b) retaliated against the Novak Family on account of
MJN having exercised or enjoyed any right granted under 42 U.S.C § 3604, in violation of the
FHA.

38.     On May 9, 2011, when it was time to schedule the trial in the Circuit Court Case
between the parties, Defendants dismissed its lawsuit against MJN with prejudice, but not until
after 3 (three) years, 1 (one) month and 9 (nine) days of the Novak Family's time, expense and
headache of defending against Defendants' malicious prosecution lawsuit. In addition, the April
26, 2010, Agreed Order was stricken, effectively restoring many of MJN's rights as a unit
owner/resident.

39.     Between the filing of MJN's first HUD Complaint in January 2007, and January 31,
2013, MJN and CBN were falsely accused of violating Association's Rules and Regulations at

14

least 12 (twelve) times. All 12 (twelve) times Plaintiffs MJN and CBN were denied their right to be heard by BOD. And BOD unanimously fined MJN and CBN at least 7 (seven) times for a total of $2,455.00.[2] Defendants placed a lien on MJN and CBN's home even though Defendants knew the fines were issued in bad faith.

40. Of the 7 (seven) fines MJN and CBN received, they include at least 3 (three) fines, where MJN and CBN never received notice *and* opportunity to be heard (December 2006, Standards of Behavior; February 2008, Pets; and May 2008, Noise (1st of 2)). And they also include 4 (four) fines after MJN and CBN were given notice but denied an opportunity to be heard (May 2008, Noise (2nd of 2); July 2008, Standards of Behavior; February 2009, Pets; and January 2010, Noise). Two of these 4 (four) denials were made after MJN and CBN still requested to be heard even though MJN and CBN were 1 (one) or 2 (two) panelists short of identifying 3 (three) panelists of the 5 (five) member panel (May 2008, Noise (2nd of 2); and July 2008, Standards of Behavior.

41. Also of the 7 (seven) fines MJN and CBN received, they include 2 (two) fines, totaling $850.00, where DW took the unprecedented step of not providing Plaintiffs MJN and CBN with a copy of the underlying complaint (February 2008, Pets; and January 2010, Noise).[3] The other 5 (five) fines were as a result of formal complaints initiated by LMS, BOD's Vice President or DW (December 2006, Standards of Behavior; May 2008, Noise (1st of 2); May 2008, Noise (2nd of 2); July 2008, Standards of Behavior; and February 2009, Pets.)

42. Also included in the 7 (seven) fines MJN and CBN received are 2 (two) fines (February 2008, Pets; and May 2008, Noise (1st of 2)), totaling $600.00, that were not ratified by

---

[2] According to Defendant DW's February 11, 2011, deposition, residents are given a warning prior to BOD levying a fine. Plaintiffs MJN and CBN never received a legitimate warning.
[3] *"They [the alleged violator] can request a copy of the complaint."* DW Dep. 104.

15

the BOD at its May 2008 BOD's meeting, nor are they mentioned in the BOD's May 2008, meeting minutes. The former was levied after both DW and LP informed MJN and/or MJN's attorney there would be no fine, and the latter without notice or opportunity for MJN and CBN to be heard. Moreover, they include $1,705.00 in fines for 5 (five) alleged violations of Association's Rules and Regulations that were actually *not* part of Association's Rules and Regulations (February 2008, Pets; May 2008, Noise (1st of 2); May 2008, Noise (2nd of 2); July 2008, Standards of Behavior; and February 2009, Pets).

43.     On at least 4 (four) occasions DW also took the unprecedented step of denying MJN and CBN's request for independent video evidence (September 2007, Pets; February 2009, Pets; March 2009, Standards of Behavior; and January 2013, Pets) from Association's security cameras.

44.     Between the filing of MJN's first HUD Complaint in January 2007 and this lawsuit, there were also numerous other incidents where Defendants LP, LMS, DW and BOD also a) refused or failed to provide reasonable accommodations as requested by Plaintiffs MJN and/or CBN; b) revoked other reasonable accommodations previously granted to Plaintiffs MJN and/or CBN, c) failed to treat the Novak Family like other residents (disparate treatment) at the Subject Property; and d) coerced, intimidated, threatened or interfered with the Novak Family.

45.     By reason of Defendants LP, LMS, DW and BOD's unlawful acts and practices, Plaintiff, Novak Family, has suffered violation of their civil rights, and emotional distress, including humiliation, mental anguish, and attendant bodily injury, such as stomach aches, headaches, and sleep loss, and other special and general damages according to proof. Accordingly, Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are entitled to compensatory damages.

16

46.     By reason of Defendants LP, LMS, DW and BOD's unlawful acts and practices, Plaintiffs, Michael J. Novak, Christina Novak and T.N., suffered catastrophic economic losses in excess of $500,000 (Five Hundred Thousand Dollars). Accordingly, Plaintiffs, Michael J. Novak Christina Bugelas Novak and T.N., are entitled to compensatory damages.

47.     In doing the acts and practices of which Plaintiff, Novak Family, complain herein, Defendants LP, LMS, DW and BOD acted with oppression, fraud, and malice, and wanton and conscious or reckless disregard of the rights of Plaintiff Novak Family. Accordingly, Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are entitled to punitive damages.

48.     There now exists an actual controversy between the parties regarding Defendants LP, LMS, DW and BOD's duties under the federal and state fair housing laws. Accordingly, Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are entitled to declaratory relief.

49.     Unless enjoined, Defendants LP, LMS, DW and BOD will continue to engage in the unlawful acts as described above. Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are now suffering and will continue to suffer irreparable injury from Defendants LP, LMS, DW and BOD's acts and practices of discrimination against the Novak Family unless this Court provides relief. Accordingly, Plaintiff, Novak Family, is entitled to injunctive relief.

50.     Plaintiff, Novak Family, prays this Court issues an injunction compelling Defendant BOD to a) allow Plaintiffs' service animal to resume accompanying her handler(s) in the common areas; b) rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel (that was removed only to spite the Novak Family); c) provide CART services and electronic CART transcripts upon request by MJN and/or CBN; and d) provide other reasonable accommodations or modifications that may be necessary.

17

## COUNT I: LP's Violation of FHA

51.     Plaintiff, Novak Family, re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 50 above as if fully set forth in paragraph 51.

52.     On or about October 29, 2010, Plaintiffs, MJN and CBN, submitted to the Secretary a complaint alleging that Defendant BOD discriminated against MJN and CBN on the basis of disability in violation of Sections 804 and 818 of the FHA, 42 U.S.C. §§ 3604 and 3617.

53.     On or about December 11, 2013, Plaintiff, Novak Family, elected to have the charge resolved in a federal civil action pursuant to Section 813(a) of the FHA, 42 U.S.C. § 3613(a).

54.     From at least September 4, 2007, Defendant LP has discriminated against the Novak Family on the basis of disability in connection with discrimination in the provision of services or facilities in connection with such dwelling, and refused to provide reasonable accommodation in rules, polices, practices, or services, when such accommodations may be necessary to afford a such persons equal opportunity to use and enjoy a dwelling. Defendant LP subjected Plaintiff, Novak Family, to extensive, continuous harassment; and created a hostile environment for Plaintiff, Novak Family, in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

55.     Defendant LP should have known of the discriminatory conduct by Defendants LMS, DW and BOD, and others but refused to take action to curtail and/or prevent the discriminatory conduct of Defendants LMS, DW and BOD, and others in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

56.     The discriminatory practices described above almost resulted in and/or may result in the actual eviction and/or constructive eviction and/or retaliatory eviction of Plaintiff, Novak

Family, from their dwelling, because of MJN and CBN's disabilities in violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

57.     The conduct described above, creating a hostile and abusive environment for Plaintiff, Novak Family, constitutes a violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

58.     The conduct described above of coercing, intimidating, threatening and/or interfering with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, in violation of 42 U.S.C. § 3617.

59.     Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are aggrieved persons as defined in Section 802(i) of the FHA, 42 U.S.C. § 3602(i). They have suffered actual damages in excess of $500,000 (Five Hundred Thousand Dollars) as a result of Defendant LP's conduct as described herein.

60.     Plaintiff, Novak Family, have suffered damages, including economic loss and emotional distress, as a result of Defendant LP's conduct.

61.     The conduct of Defendant LP described herein was intentional, willful, and taken in disregard for the rights of Plaintiff, Novak Family.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.)     Declares that Defendant LP's actions, policies and practices, as alleged herein, violate the FHA, as amended 42 U.S.C. §§ 3601 – 3619;

b.)     Enjoins LP, its officers, employees, agents, successors and all other persons in active concert or participation with them, from further:

i.   Discriminating on the basis of disability;

19

    ii.   Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, as amended; and

    iii.   Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of LP's past unlawful practices to the position they would have been in but for the discriminatory conduct;

c.)    Awards appropriate monetary damages to fully compensate each person aggrieved by LP's discriminatory housing practices for injuries caused by LP's discriminatory conduct, pursuant to 42 U.S.C. 42 § 3613(c)(1);

d.)    Awards punitive damages to aggrieved Plaintiff, Novak Family, pursuant to 42 U.S.C § 3613(c)(1);

e.)    Awards preventive relief, including a permanent or temporary injunction, restraining order, or other order against Defendant LP, pursuant to 42 U.S.C. § 3613(c)(1);

f.)    Reasonable attorney's fee and costs, pursuant to 42 U.S.C. § 3613(c)(2);

g.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

h.)    An order requiring Defendant LP to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

i.)    An order requiring Defendant LP to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

j.)    An order requiring Defendant LP to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

k.)    An order requiring Defendant LP to provide other reasonable accommodations or modifications that may be necessary;

l.)    An order requiring Defendant LP to undergo FHA and disability awareness training; and

m.)    Such other relief as the Court deems just and proper.

20

**COUNT II: LMS's Violation of FHA**

62.     Plaintiff, Novak Family, re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 61 above as if fully set forth in paragraph 62.

63.     On or about October 29, 2010, Plaintiffs, MJN and CBN, submitted to the Secretary a complaint alleging that Defendant BOD discriminated against MJN & CBN on the basis of disability in violation of Sections 804 and 818 of the FHA, 42 U.S.C. §§ 3604 and 3617.

64.     On or about December 11, 2013, Plaintiff, Novak Family, elected to have the charge resolved in a federal civil action pursuant to Section 813(a) of the FHA, 42 U.S.C. § 3613(a).

65.     From at least September 4, 2007, Defendant LMS has discriminated against Plaintiff, Novak Family, on the basis of disability in connection with discrimination in the provision of services or facilities in connection with such dwelling, and refused to provide reasonable accommodation in rules, polices, practices, or services, when such accommodations may be necessary to afford a such persons equal opportunity to use and enjoy a dwelling. Defendant LMS subjected Plaintiff, Novak Family, to extensive, continuous harassment; and created a hostile environment for Plaintiff, Novak Family, in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

66.     Defendant LMS should have known of the discriminatory conduct by Defendants LP, DW and BOD, and others but refused to take action to curtail and/or prevent the discriminatory conduct of Defendants LP, DW and BOD, and others in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

67.     The discriminatory practices described above almost resulted in and/or may result in the actual eviction and/or constructive eviction and/or retaliatory eviction of Plaintiffs, Michael

J. Novak, Christina Bugelas Novak, and T.N., from their dwelling, because of MJN and CBN's disabilities in violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

68.     The conduct described above, creating a hostile and abusive environment for Plaintiff, Novak Family, constitutes a violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

69.     The conduct described above of coercing, intimidating, threatening and/or interfering with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, in violation of 42 U.S.C. § 3617.

70.     Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are aggrieved persons as defined in Section 802(i) of the FHA, 42 U.S.C. § 3602(i). They have suffered actual damages in excess of $500,000 (Five Hundred Thousand Dollars) as a result of Defendant LMS's conduct as described herein.

71.     Plaintiff, Novak Family, have suffered damages, including economic loss and emotional distress, as a result of Defendant LMS's conduct.

72.     The conduct of Defendant LMS described herein was intentional, willful, and taken in disregard for the rights of Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N.

        **WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

        a.)     Declares that Defendant LMS's actions, policies and practices, as alleged herein, violate the FHA, as amended 42 U.S.C. §§ 3601 – 3619;

        b.)     Enjoins LMS, its officers, employees, agents, successors and all other persons in active concert or participation with them, from further:

                i. Discriminating on the basis of disability;

22

      ii.   Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, as amended; and

      iii.   Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of LMS's past unlawful practices to the position they would have been in but for the discriminatory conduct;

c.)    Awards appropriate monetary damages to fully compensate each person aggrieved by LMS's discriminatory housing practices for injuries caused by LMS's discriminatory conduct, pursuant to 42 U.S.C. 42 § 3613(c)(1);

d.)    Awards punitive damages to aggrieved Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., pursuant to 42 U.S.C § 3613(c)(1);

e.)    Awards preventive relief, including a permanent or temporary injunction, restraining order, or other order against Defendant LMS, pursuant to 42 U.S.C. § 3613(c)(1);

f.)    Reasonable attorney's fee and costs, pursuant to 42 U.S.C. § 3613(c)(2);

g.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

h.)    An order requiring Defendant LMS to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

i.)    An order requiring Defendant LMS to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

j.)    An order requiring Defendant LMS to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

k.)    An order requiring Defendant LMS to provide other reasonable accommodations or modifications that may be necessary;

l.)    An order requiring Defendant LMS to undergo FHA and disability awareness training; and

m.)    Such other relief as the Court deems just and proper.

## COUNT III: DW's Violation of FHA

73.     Plaintiff, Novak Family, re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 72 above as if fully set forth in paragraph 73.

74.     On or about October 29, 2010, Plaintiffs, MJN and CBN, submitted to the Secretary a complaint alleging that Defendant BOD discriminated against MJN & CBN on the basis of disability in violation of Sections 804 and 818 of the FHA, 42 U.S.C. §§ 3604 and 3617.

75.     On or about December 11, 2013, Plaintiff, Novak Family, elected to have the charge resolved in a federal civil action pursuant to Section 813(a) of the FHA, 42 U.S.C. § 3613(a).

76.     From at least September 4, 2007, Defendant DW has discriminated against Plaintiff, Novak Family, on the basis of disability in connection with discrimination in the provision of services or facilities in connection with such dwelling, and refused to provide reasonable accommodation in rules, polices, practices, or services, when such accommodations may be necessary to afford a such persons equal opportunity to use and enjoy a dwelling. Defendant DW subjected Plaintiff, Novak Family, to extensive, continuous harassment; and created a hostile environment for Plaintiff, Novak Family, in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

77.     Defendant DW should have known of the discriminatory conduct by Defendants LP, LMS and BOD, and others but refused to take action to curtail and/or prevent the discriminatory conduct of Defendants LP, LMS and BOD, and others in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

78.     The discriminatory practices described above almost resulted in and/or may result in the actual eviction and/or constructive eviction and/or retaliatory eviction of Plaintiffs, Michael

24

J. Novak, Christina Bugelas Novak, and T.N., from their dwelling, because of MJN and CBN's disabilities in violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

79.    The conduct described above, creating a hostile and abusive environment for Plaintiff, Novak Family, constitutes a violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

80.    The conduct described above of coercing, intimidating, threatening and/or interfering with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, in violation of 42 U.S.C. § 3617.

81.    Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are aggrieved persons as defined in Section 802(i) of the FHA, 42 U.S.C. § 3602(i). They have suffered actual damages in excess of $500,000 (Five Hundred Thousand Dollars) as a result of Defendant DW's conduct as described herein.

82.    Plaintiff, Novak Family, have suffered damages, including economic loss and emotional distress, as a result of Defendant DW's conduct.

83.    The conduct of Defendant DW described herein was intentional, willful, and taken in disregard for the rights of Plaintiff, Novak Family.

    **WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

    a.)    Declares that Defendant DW's actions, policies and practices, as alleged herein, violate the FHA, as amended 42 U.S.C. §§ 3601 – 3619;

    b.)    Enjoins DW, her agents, successors and all other persons in active concert or participation with them, from further:

        i.   Discriminating on the basis of disability;

    ii.  Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, as amended; and

    iii.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of DW's past unlawful practices to the position they would have been in but for the discriminatory conduct;

c.)    Awards appropriate monetary damages to fully compensate each person aggrieved by DW's discriminatory housing practices for injuries caused by DW's discriminatory conduct, pursuant to 42 U.S.C. 42 § 3613(c)(1);

d.)    Awards punitive damages to aggrieved Plaintiff, Novak Family, pursuant to 42 U.S.C § 3613(c)(1);

e.)    Awards preventive relief, including a permanent or temporary injunction, restraining order, or other order against Defendant DW, pursuant to 42 U.S.C. § 3613(c)(1);

f.)    Reasonable attorney's fee and costs, pursuant to 42 U.S.C. § 3613(c)(2);

g.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

h.)    An order requiring Defendant DW to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

i.)    An order requiring Defendant DW to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect lobby channel;

j.)    An order requiring Defendant DW to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

k.)    An order requiring Defendant DW to provide other reasonable accommodations or modifications that may be necessary;

l.)    An order requiring Defendant DW to undergo FHA and disability awareness training; and

m.)    Such other relief as the Court deems just and proper.

## COUNT IV: BOD's Violation Of FHA

84.     Plaintiff, Novak Family, re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 83 above as if fully set forth in paragraph 84.

85.     On or about October 29, 2010, Plaintiffs, MJN and CBN, submitted to the Secretary a complaint alleging that Defendant BOD discriminated against MJN & CBN on the basis of disability in violation of Sections 804 and 818 of the FHA, 42 U.S.C. §§ 3604 and 3617.

86.     On or about December 11, 2013, Plaintiff, Novak Family, elected to have the charge resolved in a federal civil action pursuant to Section 813(a) of the FHA, 42 U.S.C. § 3613(a).

87.     From at least September 4, 2007, Defendant BOD has discriminated against Plaintiff, Novak Family, on the basis of disability in connection with discrimination in the provision of services or facilities in connection with such dwelling, and refused to provide reasonable accommodation in rules, polices, practices, or services, when such accommodations may be necessary to afford a such persons equal opportunity to use and enjoy a dwelling. Defendant BOD subjected Plaintiff, Novak Family, to extensive, continuous harassment; and created a hostile environment for Plaintiff, Novak Family, in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

88.     Defendant BOD should have known of the discriminatory conduct by Defendants LP, LMS and DW, and others but refused to take action to curtail and/or prevent the discriminatory conduct of Defendants LP, LMS and DW, and others in violation of Sections 804(f) and 818 of the FHA, 42 U.S.C. §§ 3604(f) and 3617.

89.     The discriminatory practices described above almost resulted in and/or may result in the actual eviction and/or constructive eviction and/or retaliatory eviction of Plaintiffs, Michael

J. Novak, Christina Bugelas Novak, and T.N., from their dwelling, because of MJN and CBN's disabilities in violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

90. The conduct described above, creating a hostile and abusive environment for Plaintiff, Novak Family, constitutes a violation of 804(f) of the FHA, 42 U.S.C. § 3604(f).

91. The conduct described above of coercing, intimidating, threatening and/or interfering with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, in violation of 42 U.S.C. § 3617.

92. Plaintiffs, Michael J. Novak, Christina Bugelas Novak and T.N., are aggrieved persons as defined in Section 802(i) of the FHA, 42 U.S.C. § 3602(i). They have suffered actual damages in excess of $500,000 (Five Hundred Thousand Dollars) as a result of Defendant BOD's conduct as described herein.

93. Plaintiff, Novak Family, have suffered damages, including economic loss and emotional distress, as a result of Defendant BOD.

94. The conduct of Defendant BOD described herein was intentional, willful, and taken in disregard for the rights of Plaintiff, Novak Family.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.) Declares that Defendant BOD's actions, policies and practices, as alleged herein, violate the FHA, as amended 42 U.S.C. §§ 3601 – 3619;

b.) Enjoins Defendant BOD, its officers, employees, agents, successors and all other persons in active concert or participation with them, from further:

i. Discriminating on the basis of disability;

28

ii. Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805 or 806 of the FHA, as amended; and

iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of BOD's past unlawful practices to the position they would have been in but for the discriminatory conduct;

c.) Awards appropriate monetary damages to fully compensate each person aggrieved by BOD's discriminatory housing practices for injuries caused by BOD's discriminatory conduct, pursuant to 42 U.S.C. 42 § 3613(c)(1);

d.) Awards punitive damages to aggrieved Plaintiff, Novak Family, pursuant to 42 U.S.C § 3613(c)(1);

e.) Awards preventive relief, including a permanent or temporary injunction, restraining order, or other order against Defendant BOD, pursuant to 42 U.S.C. § 3613(c)(1);

f.) Reasonable attorney's fee and costs, pursuant to 42 U.S.C. § 3613(c)(2);

g.) Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

h.) An order requiring Defendant BOD to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

i.) An order requiring Defendant BOD to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

j.) An order requiring Defendant BOD to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

k.) An order requiring Defendant BOD to provide other reasonable accommodations or modifications that may be necessary;

l.) An order requiring Defendant BOD to undergo FHA and disability awareness training; and

m.) Such other relief as the Court deems just and proper.

**COUNT V: LP Committed Intentional Infliction of Emotional Distress Upon Plaintiffs**

95. Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 94 as if fully set forth in this paragraph 95.

96. The actions of LP were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

97. The conduct of LP against Plaintiff, Novak Family, was extreme and outrageous.

98. The conduct of Defendant LP did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.) Declares that Defendant LP has intentionally inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.) Compensatory damages;

c.) Punitive damages;

d.) Attorney's fees and costs;

e.) Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.) An order requiring Defendant LP to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.) An order requiring Defendant LP to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.) An order requiring Defendant LP to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.) An order requiring Defendant LP to provide other reasonable accommodations or modifications that may be necessary;

j.) An order requiring Defendant LP to undergo FHA and disability awareness training; and

k.) Such other relief as the Court deems just and proper.

**COUNT VI: LMS Committed Intentional Infliction of Emotional Distress Upon Plaintiffs**

99.    Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 98 as if fully set forth in this paragraph 99.

100.    The actions of LMS were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

101.    The conduct of LMS against Plaintiff, Novak Family, was extreme and outrageous.

102.    The conduct of Defendant LMS did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.)    Declares that Defendant LMS has intentionally inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.)    Compensatory damages;

c.)    Punitive damages;

d.)    Attorney's fees and costs;

e.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.)    An order requiring Defendant LMS to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.)    An order requiring Defendant LMS to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.)    An order requiring Defendant LMS to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.)    An order requiring Defendant LMS to provide other reasonable accommodations or modifications that may be necessary;

j.)    An order requiring Defendant LMS to undergo FHA and disability awareness training; and

k.)    Such other relief as the Court deems just and proper.

31

**COUNT VII: DW Committed Intentional Infliction of Emotional Distress Upon Plaintiffs**

103.    Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 102 as if fully set forth in this paragraph 103.

104.    The actions of DW were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

105.    The conduct of DW against Plaintiff, Novak Family, was extreme and outrageous.

106.    The conduct of Defendant DW did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.) Declares that Defendant DW has intentionally inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.) Compensatory damages;

c.) Punitive damages;

d.) Attorney's fees and costs;

e.) Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.) An order requiring Defendant DW to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.) An order requiring Defendant DW to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.) An order requiring Defendant DW to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.) An order requiring Defendant DW to provide other reasonable accommodations or modifications that may be necessary;

j.) An order requiring Defendant DW to undergo FHA and disability awareness training; and

k.) Such other relief as the Court deems just and proper.

## COUNT VIII: BOD Committed Intentional Infliction of Emotional Distress Upon Plaintiffs

107.    Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 106 as if fully set forth in this paragraph 107.

108.    The actions of BOD were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

109.    The conduct of BOD against Plaintiff, Novak Family, was extreme and outrageous.

110.    The conduct of Defendant BOD did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.)    Declares that Defendant BOD has intentionally inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.)    Compensatory damages;

c.)    Punitive damages;

d.)    Attorney's fees and costs;

e.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.)    An order requiring Defendant BOD to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.)    An order requiring Defendant BOD to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.)    An order requiring Defendant BOD to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.)    An order requiring Defendant BOD to provide other reasonable accommodations or modifications that may be necessary;

j.)    An order requiring Defendant BOD to undergo FHA and disability awareness training; and

k.)    Such other relief as the Court deems just and proper.

**COUNT IX: LP Committed Negligent Infliction Of Emotional Distress Upon Plaintiffs**

111.    Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 110 as if fully set forth in this paragraph 111.

112.    Defendant LP had a duty to a) their client BOD (and ultimately Association's unit owners, including Plaintiffs MJN and CBN), b) the Court, requiring Defendant Levenfeld Pearlstein to make written and oral statements to the Court that are fair and accurate representations of their understanding of the law and facts, and c) to the law. Lawyers cannot engage in frivolous or meritless lawsuits, and they must engage in conduct to ensure that cases are decided only on their own merits.

113.    The actions of Defendant LP were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

114.    The conduct of Defendant LP against Plaintiff, Novak Family, was extreme and outrageous.

115.    The actions and negligence of Defendant LP did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

    **WHEREFORE,** the Plaintiffs respectfully prays that the Court grant them the following relief:

    a.)    Declares that Defendant LP has negligently or with reckless disregard inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

    b.)    Compensatory damages;

    c.)    Punitive damages;

    d.)    Attorney's fees and costs;

    e.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

34

f.) An order requiring Defendant LP to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.) An order requiring Defendant LP to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.) An order requiring Defendant LP to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.) An order requiring Defendant LP to provide other reasonable accommodations or modifications that may be necessary;

j.) An order requiring Defendant LP to undergo FHA and disability awareness training; and

k.) Such other relief as the Court deems just and proper.

## COUNT X: LMS Committed Negligent Infliction Of Emotional Distress Upon Plaintiffs

116. Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 115 as if fully set forth in this paragraph 116.

117. Defendant LMS had a duty to a) supervise and train its employees, and 2) ensure its employees were providing professional and courteous service to all residents.

118. The actions of Defendant LMS were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

119. The conduct of Defendant LMS against Plaintiff, Novak Family, was extreme and outrageous.

120. The actions and negligence of Defendant LMS did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.)    Declares that Defendant LMS has negligently or with reckless disregard inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.)    Compensatory damages;

c.)    Punitive damages;

d.)    Attorney's fees and costs;

e.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.)    An order requiring Defendant LMS to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.)    An order requiring Defendant LMS to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.)    An order requiring Defendant LMS to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.)    An order requiring Defendant LMS to provide other reasonable accommodations or modifications that may be necessary;

j.)    An order requiring Defendant LMS to undergo FHA and disability awareness training; and

k.)    Such other relief as the Court deems just and proper.

## COUNT XI: DW Committed Negligent Infliction Of Emotional Distress Upon Plaintiffs

121.    Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 120 as if fully set forth in this paragraph 121.

122.    Defendant DW had a duty to be professional and courteous to all residents.

123.    The actions of Defendant DW were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

124.    The conduct of Defendant DW against Plaintiff, Novak Family, was extreme and outrageous.

125.    The actions and negligence of Defendant DW did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, the Plaintiffs respectfully prays that the Court grant them the following relief:

a.)    Declares that Defendant DW has negligently or with reckless disregard inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.)    Compensatory damages;

c.)    Punitive damages;

d.)    Attorney's fees and costs;

e.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.)    An order requiring Defendant DW to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.)    An order requiring Defendant DW to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.)    An order requiring Defendant DW to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.)    An order requiring Defendant DW to provide other reasonable accommodations or modifications that may be necessary;

j.)    An order requiring Defendant DW to undergo FHA and disability awareness training; and

k.)    Such other relief as the Court deems just and proper.

## COUNT XII: BOD Committed Negligent Infliction Of Emotional Distress Upon Plaintiffs

126.    Plaintiff, Novak Family, re-alleges and herein incorporates the allegations in paragraphs 1 through 125 as if fully set forth in this paragraph 126.

127.    The Defendant BOD has a duty of care and loyalty to Association members like Plaintiffs, Michael J. Novak and Christina Bugelas Novak. This requires Defendant BOD to

exercise prudent business judgment in the maintenance of the common elements and the administration of the property.

128.    The actions of Defendant BOD were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff, Novak Family, severe and significant emotional distress.

129.    The conduct of Defendant BOD against Plaintiff, Novak Family, was extreme and outrageous.

130.    The actions and negligence of Defendant BOD did cause severe and emotional distress and physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE,** the Plaintiffs respectfully prays that the Court grant them the following relief:

a.)    Declares that Defendant BOD has negligently or with reckless disregard inflicted emotional distress upon the Novak Family, in violation of Illinois Law;

b.)    Compensatory damages;

c.)    Punitive damages;

d.)    Attorney's fees and costs;

e.)    Rescission of all fines levied against Plaintiffs MJN and CBN, and release of lien;

f.)    An order requiring Defendant BOD to allow the Novak Family's service animal to accompany her handler(s) in the common areas;

g.)    An order requiring Defendant BOD to rescind rule changes (Deliveries, Stairwells & Hallways) that targeted just the Novak Family, and reconnect the lobby channel;

h.)    An order requiring Defendant BOD to provide CART services and electronic CART transcripts upon request by MJN and/or CBN;

i.)    An order requiring Defendant BOD to provide other reasonable accommodations or modifications that may be necessary;

38

j.) An order requiring Defendant BOD to undergo FHA and disability awareness training; and

k.) Such other relief as the Court deems just and proper.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

Respectfully submitted,

Michael J. Novak, Pro Se
1445 North State Parkway, #205
Chicago, Illinois 60610
No Telephone – Deaf
mailto:mnovak@chicagobooth.edu

Christina Bugelas Novak
1445 N. State Pkwy, #205
Chicago, Illinois 60610
No Telephone – Deaf

T.N., By her Parent and Next
Friend, Michael J. Novak
1445 N. State Pkwy, #205
Chicago, Illinois 60610
No Telephone – Deaf

Dated: 12/12/13

# EXHIBIT A

# INTERNET RELAY CALLS TO PROPERTY MANAGER (9/5/07 - 3/31/08)

| Month | Day | Begin | End | Subject |
|---|---|---|---|---|
| September | 5 | 2:16 PM | 2:20 PM | Informed PM I gave my atty a statement regarding 9/5/07 AM incident |
| September | 18 | 1:22 PM | 1:35 PM | Status of warning violation, and errors found in 2006 audited financial statements |
| September | 24 | 10:06 AM | 10:25 AM | Status of requests for records that were more than 30 days old |
| October | 1 | 7:36 AM | 7:38 AM | Left message regarding security breach (garage door always being left open) |
| October | 18 | 8:37 AM | 8:48 AM | Status of old records request & security concerns |
| October | 24 | 9:52 AM | 9:54 AM | Asked doorman to have PM call me back |
| October | 31 | 12:24 PM | 12:27 PM | PM was on her way out, she asked me to please call her back |
| November | 19 | 9:43 AM | 9:48 AM | Smoking in building, perhaps by doorman or garage hikers |
| November | 28 | 7:46 AM | 7:50 AM | Reported the elevator ceiling looked like it was going to fall |
| December | 12 | 10:48 AM | 10:55 AM | Status of November 9 request for certain invoices |
| December | 14 | 8:41 AM | 8:46 AM | Questions on invoices I just received from PM. Thought she gave me too many |
| December | 19 | 11:56 AM | 11:58 AM | Left message for PM to return my call |
| December | 19 | 12:28 PM | 12:39 PM | Suspicious people on our floor; receipt of letter placed under her door |
| January | 9 | 2:25 PM | 2:34 PM | Nightshift doorman sleeping and status of 11/27/07 work order request (Flag) |
| January | 15 | 9:21 AM | 9:35 AM | Reported being stuck in elevator the night before |
| January | 16 | 8:19 AM | 8:31 AM | Plumbing problem in unit due to problems with common area pipes |
| January | 18 | 10:25 AM | 10:27 AM | Left message regarding request more than 30 days old |
| January | 22 | 11:58 AM | 12:05 PM | Confirm receipt of letter placed under her door |
| January | 23 | 3:02 PM | 3:22 PM | Regarding plumbing bill found on my door for work performed on 1/16/08 |
| January | 29 | 9:51 AM | 10:03 AM | Requested status of our appeal of plumbing bill |
| February | 4 | 2:26 PM | 2:33 PM | Reported numerous violations that are more than a month old |
| February | 7 | 10:35 AM | 10:40 AM | Regarding the receipt of a duplicate set of minutes that I already had received |
| February | 11 | 8:38 AM | 8:41 AM | Reported trash chute backed up four floors |
| February | 28 | 2:03 PM | 2:13 PM | Regarding beeping noise heard from defective smoke detector in my unit |
| February | 28 | 2:28 PM | 2:30 PM | Returning PM's call regarding beeping from defective smoke detector in my unit |
| March | 3 | 12:27 PM | 12:31 PM | Left message for property manager to return my call |
| March | 11 | 11:35 AM | 11:44 AM | Second follow up on American Flag issue |
| March | 11 | 12:35 PM | 12:43 PM | Status of October 29, 2007 request to fix closed captioning in exercise room |
| March | 26 | 10:52 AM | 10:56 AM | Requested an appt to review the minutes in her office next Monday |
| March | 27 | 2:02 PM | 2:07 PM | Changed her time to review the minutes in her office from 10 AM to 11 AM |

## E-MAILS (FROM MICHAEL NOVAK OR CHRISTINA AND MICHAEL NOVAK (9/5/07 - 3/31/08)

| Month | Day | Year | Subject |
|---|---|---|---|
| November | 1 | 2007 | Security Breach, gated stairs |
| November | 6 | 2007 | Reply to PM's letter of 11/6/07 regarding misconduct by a fellow unit owner |
| December | 18 | 2007 | Status of request for records of Association initially requested on 11/9/07 |
| January | 23 | 2008 | Appeal of $45 maintenance (plumbing) bill |
| January | 24 | 2008 | Regarding formal complaint from the PM we found under our door dated 10/24/07 |
| January | 28 | 2008 | Reply to PM's e-mail, thanking her for investigating the "old" formal complaint |
| February | 28 | 2008 | Response to 2/27/08 violation notice |
| February | 29 | 2008 | Request for names and addresses of all unit owners |
| March | 13 | 2008 | Formal complaint regarding doorman allowing resident and her dog enter lobby |
| March | 21 | 2008 | Second request for records of the Assn (Names, Address, Vote of Owners) |