MICHAEL NOVAK, CHRISTINA NOVAK,       )
and their daughter, T.N.,             )
                                      )
          Plaintiffs,                 )        No. 13 C 08861
                                      )
     v.                               )
                                      )        Judge Edmond E. Chang
LEVENFELD PEARLSTEIN, STATE PARKWAY   )
CONDOMINIUM ASS'N, THE BOARD OF THE   )
STATE PARKWAY CONDOMINIUM ASS'N,      )
DONNA WEBER, and                      )
LIEBERMAN MANAGEMENT SERVS., INC.,    )
                                      )
          Defendants.                 )

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiffs Michael Novak, Christina Novak, and their daughter T.N. allege violations of the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq*., and raise related state-law emotional distress claims.[1] The Novaks bring this suit against their condominium association, along with its property management company, building manager, and the law firm representing it. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to stay the action pending the outcome of state-court and administrative proceedings involving the parties. For the reasons explained below, Defendants' motions are granted in part and denied in part.

---

[1]The Court has subject matter jurisdiction over the FHA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the Illinois state-law claims under 28 U.S.C. § 1367.

# I. Background

For purposes of evaluating the motions to dismiss, the Court accepts the Complaint's factual allegations as true and draws reasonable inferences in the Novaks' favor. *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074, 2079 (2011).

## A. The Novaks' 2007 IDHR Complaint and Disputes over Service Dog

Michael and Christina Novak are the co-owners of an apartment located on North State Parkway in Chicago, where they live with their minor child, T.N. R. 1, Compl. ¶¶ 4-5, 7. Both Michael and Christina have "profound bilateral sensorineural hearing loss" and, because of their deafness, employ a service dog, Hera. *Id.* ¶ 6.

For a number of years, the Novaks have had a contentious relationship (to say the least) with Defendant State Parkway Condominium Association, the corporate entity that administers the high-rise building in which the Novaks' apartment is located.[2] Compl. ¶ 11. In January 2007, the Novaks filed a FHA complaint with the United States Department of Housing and Urban Development (HUD), alleging that the Association unreasonably refused to provide a real-time transcript technology service, known as Communication Access Realtime Translation (CART), at the Association's board meetings. Compl. ¶¶ 13, 19; R. 44-1,

---

[2]The Novaks refer interchangeably in the Complaint and their briefs to the Association and to its Board of Directors as a named party. The Association asserts in a footnote to its brief that the Board is not an entity that can be sued, but does not cite to any authority in support of that contention. It is unclear whether the Board is a suable entity; under Illinois law, a condo association board has "standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners." 765 ILCS 605/9.1. For now, the Court leaves both entities as named parties.

HUD Housing Discrimination Compl. Following a conciliation session held by the Illinois Department of Human Rights (IDHR) (after HUD apparently referred the matter to the IDHR), the Association agreed in September 2007 to provide the Novaks with a $10,000 payment and CART services at three board meetings each year. Compl. ¶ 14; R. 44-2, Settlement Agreement.

But that settlement did not end the disputes. According to the Novaks, that same month (September 2007), Lieberman Management Services, Inc. (LMS), the building's property management company, and Donna Weber, the newly arrived LMS-employed building manager, Compl. ¶¶ 9-10, accused the Novaks of several violations of the Association's rules, including a rule barring animals in the main lobby and in the passenger elevator, *id.* ¶¶ 15-16. The Novaks allege that they brought Hera into those areas pursuant to an exception to the no-animals rule, which allowed animals in those areas when the service elevator was not available. *Id.* ¶ 16. After LMS sent them a warning letter on September 11, 2007, the Novaks requested a hearing under the Association's rules. *Id.* ¶¶ 18-19. Following a series of conversations in which Weber apparently apologized for not understanding the rules, the Novaks believed that the warning had been withdrawn. *Id.* ¶ 20. But then they received a letter from the Association's law firm, Levenfeld Pearlstein, LLC (for convenience's sake, referred to as Levenfeld from now on), stating that the Association would not hold a hearing because the Association was not going to levy a fine; the letter went on to direct the Novaks to follow the directions set forth in the warning letter. *Id.* ¶ 22.

The dispute resurfaced in late October 2007, when Weber—purportedly acting "on behalf of" Levenfeld—"harassed" Michael Novak with questions about Hera. *Id* ¶ 25. In response, Novak informed the law firm that effective immediately the service dog would accompany the family in all common areas, including the lobby.[3] *Id.* On October 29, 2007, Novak met with Weber, three members of the Association's board, and Levenfeld lawyers at the law firm's office. *Id.* ¶ 27. Novak believed that those in attendance addressed him in a "threatening tone" as he presented a list of requests, including recognition of the Novaks' right to bring Hera into common areas and production of certain financial records about Association dealings that Novak had previously challenged. *Id.* On October 30, 2007, Levenfeld informed the Novaks by letter that the request concerning the service dog was denied, some financial statements would be provided, and that Michael Novak must stay out of Weber's office. *Id.* ¶ 28. In response, the Novaks' then-attorney informed Levenfeld that the Association's stance appeared to be unlawful retaliation for the recently settled IDHR case and failure to provide a reasonable accommodation as required by the settlement agreement. *Id.* ¶ 29.

## B. The Association's State-Court Action against Michael Novak

Several months later, in March 2008, the Association sued Michael Novak in Cook County Circuit Court, alleging that Novak had harassed Weber with excessive emails, telephone calls, and correspondence about Association documents and his

---

[3] This opinion's references to "Novak" are references to Michael Novak unless otherwise specified.

accommodation demands.[4] *Id.* ¶ 30. This state-court complaint was later amended in November 2009 to include allegations that Novak harassed Association Board members, disrupted board meetings, and violated Association rules, and to seek injunctive relief including the forced sale of the Novaks' condo. *Id.* ¶ 34. Novak filed counterclaims, apparently unrelated to any housing discrimination claims, against the Association for its alleged failure to produce financial records.[5] R. 58, Pls.' Br. in Opp'n to Association Mot. (Pls.' Ass'n Br.) at 6. On April 26, 2010, the parties agreed to, and the Circuit Court entered, an interim order enjoining the Novaks from taking their service dog into common areas and entering Weber's office, and limiting communication between the Novaks and the Association and LMS. Compl. ¶ 36; Agreed Order, No. 08 CH 11941. That order was vacated in May 2011, when the Association voluntarily dismissed its claims before a scheduled trial in state court.[6] Compl. ¶ 38.

### C. The Novaks' 2010 IDHR Complaint

---

[4]The Complaint states that the lawsuit was brought by all present Defendants, including Levenfeld, but the case caption on an order entered by the state court shows that the sole parties were the Association Board and Michael Novak. *See* R. 44-3, Agreed Order, No. 08 CH 11941. Despite the Complaint's suggestion that Levenfeld was an actual plaintiff in the state case, the Novaks appear to recognize that Levenfeld in fact only filed the suit on behalf of its "client," the Association. R. 58, Pls.' Br. in Opp'n to Levenfeld Mot. (Pls.' Levenfeld Br.) at 16.

[5]The Novaks' federal Complaint makes no mention of these counterclaims. It is only in their response brief to the Association and related Defendants' brief, that the Novaks acknowledge and describe them. It does not appear, oddly, that any of the parties have placed in this Court's record a copy of the state-court complaint or counterclaims.

[6]The Association asserts that Novak's counterclaims remain pending, with motions for summary judgment fully briefed and awaiting decision by the state court. R. 44, Association, LM, and Weber's (Ass'n Defs.) Br. at 2. Neither the Novaks' federal Complaint nor their response brief makes mention of any pending motions on these counterclaims.

Meanwhile, in October 2010, the Novaks filed a new housing discrimination complaint with HUD, which referred the matter to the IDHR. *Id.* ¶ 37; Pls.' Ass'n Br. at 7 n. 8. The complaint evidently alleged that the Association had violated federal and state fair housing laws by (1) attempting to terminate the Novaks' ownership of their condo through the state court action; (2) issuing a noise violation against the Novaks in January 2010; (3) refusing to provide CART services at a hearing requested to contest that violation; and (4) refusing to recognize their use of a service dog, in retaliation for the Novaks' 2007 complaint.[7] R. 44-4, IDHR Compl. at 2.

On June 30, 2011, the IDHR issued a "Determination of Lack of Substantial Evidence" to support the Novaks' complaint. R. 44-5, IDHR Determination. The IDHR found that any claims of discrimination from the Association's lawsuit or the noise violation (and related hearing) were moot because the lawsuit was dismissed and the asserted violation had been withdrawn. *Id.* at 3-4. On the other claims, the agency found that the alleged adverse actions, taking place in 2009 and 2010, had not occurred "within such a time period as to raise an inference of retaliatory motivation," because the settlement agreement in the first IDHR case had been concluded a few years earlier, in September 2007. *Id.*

The Novaks requested a review by the Illinois Human Rights Commission, but the Commission sustained (that is, affirmed) the IDHR's dismissal of the

---

[7]The Association and related Defendants have attached purported copies of the 2010 IDHR Complaint and subsequent related documents, but these have not been properly authenticated. While the Novaks acknowledge the existence of an "agency charge" that they have filed, Pls.' Ass'n Response Br. at 7, they make no reference to the details of that complaint or any specific determinations made in connection to it.

complaint by a voice vote on October 23, 2013. R. 69-1, Comm'n Meeting of Panel A Minutes at III(A). The Commission has yet to issue a final written order that formally affirms the dismissal.

### D. Fines and Accusations of Rules Violations

There is one more set of allegedly discriminatory conduct. The Novaks assert that, between the filing of their first HUD complaint in January 2007 and January 2013, they were falsely accused of violating various Association rules, and in each instance denied a right to a hearing. Compl. ¶ 39. They also received seven fines between December 2006 and July 2008, totaling $2,455, and afterwards a lien was placed on the Novaks' condo. *Id.* ¶¶ 39-40. For three of these fines, the Novaks allegedly received no notice, and for all seven instances, the Novaks allegedly had no opportunity to be heard. *Id.* ¶ 40.

### E. This Lawsuit

Proceeding *pro se*, the Novaks commenced this federal-court action in December 2013, naming as defendants the Association, LMS, and Weber (collectively, the Association Defendants), as well as their law firm, Levenfeld Pearlstein. Compl. The Complaint's twelve counts allege that each of the Defendants discriminated against the Novaks by refusing to accommodate their disability, attempting to force the sale of their home in retaliation, and coercing and threatening them. *Id.* ¶¶ 51-130. The Association Defendants and Levenfeld have both moved to dismiss or to stay the action, arguing that the Novaks fail to state

cognizable claims, the claims are time-barred, and collateral estoppel applies to bar the claims. R. 41, 42, Mots. Dismiss.

## II. Legal Standards

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007)). The allegations "must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, and are entitled to an assumption of truth so long as they are *factual* in nature, rather than mere *legal* conclusions. *Iqbal,* 556 U.S. at 678-79.

In the case of a *pro se* litigant, pleadings are not held to the same standards as those drafted by a lawyer and instead must be liberally construed. *See Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) (citing *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988)). As a result, a *pro se* complaint "may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." *Wilson*, 839 F.2d at 378. Still, a *pro se* plaintiff's pleadings must comply with all applicable rules of procedure and be "otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

8

### III. Analysis

### A. FHA Claims Against the Association Defendants

### 1. Issue Preclusion Does Not Apply

The Association Defendants first contend that the Novaks' claims are collaterally estopped because the claims have already been adjudicated in state agency proceedings before the IDHR and, subsequently, the Illinois Human Rights Commission. Ass'n Defs.' Br. at 8-12. Collateral estoppel, also known as issue preclusion, prevents "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted). It may be applied "when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to . . . the prior adjudication." *Du Page Forklift Serv., Inc. v. Material Handling Servs.*, Inc., 744 N.E.2d 845, 849 (2001); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).[8]

Here, the Association Defendants seek to apply issue preclusion not to a court-generated judgment, but to the determination of a state agency, the IDHR. The Seventh Circuit has yet to decide whether issue preclusion applies in the context of administrative findings on FHA claims, but at least two district courts

---

[8]Although the Association Defendants do not raise it, the Court notes that the related doctrine of claim preclusion also requires the entry of a final decision on the merits, which, as explained, is absent here. *See Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 740 (7th Cir. 2006).

have accepted that it can. *See Sokoya v. 4343 Clarendon Condo Ass'n*, No. 96 C 5278, 1996 WL 699634, at \*3-5 (N.D. Ill. Nov. 27, 1996) (common-law administrative preclusion applies to IHRC and FHA, in contrast to other discrimination statutes with broader remedial schemes) (citing *Ward v. Harte*, 794 F. Supp. 109, 113-14 (S.D.N.Y. 1992)); *Gao v. Snyder Companies*, No. 10-CV-1025, 2010 WL 3037526, at \*4 (C.D. Ill. July 13, 2010) (suggesting that, so long as due process is provided to complainant, Commission administrative findings on FHA claims could have preclusive effect) *report and recommendation adopted,* 2010 WL 3037800 (C.D. Ill. Aug. 4, 2010). As explained below, this Court need not decide the issue right now.

The reason that the issue need not be decided right now is that, even if issue preclusion *could* be applied to the Commission's findings, there is no final judgment in the Novaks' case. The Commission evidently voted to uphold the IDHR's dismissal of the Novaks' complaint, but it has issued no final written order or decision.[9] Ass'n Defs.' Br. at 3 & n.5 ("The [Commission] has not yet issued the written order."). Until the proceedings for the Novaks' agency complaint run their full course, including judicial review by the Illinois courts (if pursued), *see* 735 ILCS § 5/3-113, an issue-preclusion defense—assuming it applies at all to Commission

---

[9]That the IHRC took this vote is a factual assertion that is not found in the Complaint or acknowledged by the Novaks in their brief, and is supported only by a copy of the Commission's meeting minutes. *See supra* n.7. In any event, the Association Defendants acknowledge that a final written decision or order has not been issued. Ass'n Defs.' Br. at 3, n.5.

findings for fair housing claims (and later state-court review, if any)—is prematurely asserted when there is no final Commission order yet.[10]

## 2. Abstention is Not Warranted, Except as to Two Discrete Issues

The Association Defendants alternatively argue that because there are pending parallel state-court and administrative proceedings over "substantially similar" claims as those raised in this lawsuit, this Court should abstain from exercising duplicative jurisdiction. Ass'n Defs.' Br. at 5-8. Under the *Colorado River* doctrine, "a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). But abstention "is appropriate only in exceptional circumstances" because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S. at 813, 817). To determine whether it should disavow jurisdiction, the court first "must determine whether the concurrent state and federal actions are actually parallel." *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d

---

[10]The Court also notes that an issue-preclusion defense, even if properly asserted now, would not apply to *all* of the Novaks' claims. For issue preclusion to apply, the issue in question must be *identical* to one decided by the prior case. *Adams*, 742 F.3d at 736. Although there is some overlap in the claims in the Novaks' 2010 agency charge and the claims in this lawsuit, there are issues that only the latter raise, as explained in this opinion's discussion of the Association Defendants' abstention-doctrine argument. Even if the administrative findings were final and had preclusive effect, they would not prevent the additional claims that are unique to the federal-court action, described *infra*, from going forward here.

744, 751 (7th Cir. 2006) (internal quotation marks and citation omitted). The court then must consider and balance a number of non-exclusive factors. *See id.* at 754 (citation omitted).

Those factors need not be analyzed here because the Association Defendants fail to satisfy the first element—the suits are not "parallel." "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks and citation omitted). The state action need not be identical, but there must be a "substantial likelihood that the foreign litigation will dispose of *all claims presented in the federal case.*" *Id.* (citations omitted) (emphasis added). That outcome is impossible from the Novaks' state-court and agency proceedings. Although certainly the parties overlap (and that is essentially the crux of the Association Defendants' argument), a review of the claims at play in the two state fora reveals that the federal action raises at least some claims that are different.

First, in the IDHR proceeding, which is still formally pending with the Commission, the issues presented are (1) the Association's allegedly retaliatory state-court lawsuit; (2) a specific alleged noise violation in January 2010; (3) the refusal to provide CART services at the hearing on that alleged noise violation; and (4) the refusal to recognize the Novaks' service dog as retaliation for their 2007 agency charge.[11] IDHR Compl. at 2. The Novaks' federal Complaint, by contrast,

_____

[11]As explained above, *supra* n.7, the contents of the Novaks' 2010 IDHR complaint have not been included in the Novaks' pleadings. But the Association Defendants have

seeks relief for the Association's refusal to recognize their service dog as a *continuing* failure to provide a *reasonable accommodation* (and not merely as an *isolated* act of *retaliation* committed in 2010); the levying of discriminatory fines and a lien on their home; and failure to provide CART services on an *ongoing* basis, not simply at one 2010 hearing. Compl. ¶ 1.

Pending in this Court, then, is a broader array of discrimination claims, as well as a claim (the fines and lien) that is not mentioned at all in the state administrative action. And where there is some overlap in issues, the IHRC has before it only a subset. Thus the Commission's proceeding, when it is finalized, will *not* "dispose of all claims presented in the federal case" and, as a result, the proceeding's pendency does not support abstention. *AAR Int'l.*, 250 F.3d at 518. As for the subset of claims that are in fact pending before the Commission, the proper course is to stay discovery on these narrow claims only (to the extent it is possible to cull them from the other claims), because their contemporaneous disposition by the agency could give rise to dueling issue-preclusion problems. *See Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (court should "consider whether a stay will simplify the issues in question"). The parties may revisit these claims, and their impact on the present litigation, once the Commission has issued its final written order.

Turning next to the ongoing case in the Circuit Court of Cook County, the Court notes again that the parties have provided little in the way of actual copies of

---

attached to their brief a purported copy of the complaint. The Novaks have not (at least not yet) disputed that the defense copy of the complaint is not authentic.

state-court filings. *See supra* nn.5-6. In any event, taking the parties' representations at face value, it is clear that there is no overlap between the issues currently pending before the state and federal courts. The only pending claims before the Illinois court are Novak's counterclaims, which concern his attempt to compel the Association to produce financial records. Pls.' Ass'n Br. at 6. The Association Defendants make no meaningful attempt to show how these claims, which on their face are unrelated to any fair housing claim, raise "substantially similar" issues as the present action, aside from the fact that the litigants are the same.

Accordingly, the Court declines to apply the abstention doctrine and will retain jurisdiction over the case. Only a narrow subset of claims is currently pending in a parallel state proceeding, and those claims will be stayed in this action. To be clear, these are (1) the CART claim for the *one* 2010 hearing and (2) the 2010 refusal to accommodate the service dog as retaliation for the 2007 complaint. Discovery will be stayed as to these two issues only, and the discovery schedule will be discussed at the next status hearing.

### B. FHA Claims Against Levenfeld

Levenfeld moves separately to dismiss the claims against it, contending that it cannot be held liable for merely acting in the scope of legal representation of its clients. Levenfeld Br. at 9-10. The law firm also argues that the Novaks' claims are untimely. *Id.* at 7-8. Levenfeld is correct on both points.

## 1. Failure to State a Claim

The Novaks concede that Levenfeld was "not in a position to *directly* provide accommodating services or facilities" or otherwise control how the Association's rules were set or imposed. Pls.' Levenfeld Br. at 9 (emphasis in original). But the Novaks contend that Levenfeld "masterminded a conspiracy to drive" them from their home in conjunction with the Association through "extensive, continuous harassment" that the law firm itself carried out. Pls.' Levenfeld Br. at 1; Compl. ¶¶ 54, 56.

Section 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere" with the exercise or enjoyment of any rights protected by the FHA's substantive provisions. 42 U.S.C. § 3617. One of these provisions, Section 3604, in turn bans discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling," as well as any acts that "otherwise make unavailable or deny" a dwelling. 42 U.S.C. § 3604(b), (f). To make out a *prima facie* case under Section 3617, a plaintiff must show "more than a 'quarrel among neighbors' or an 'isolated act of discrimination,' but rather . . . a 'pattern of harassment, invidiously motivated.'" *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (quoting *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004)). Prohibited interference is not limited to discrimination during the acquisition of a home, but "can take place at any time," including "post-purchase," as is potentially implicated here. *E.-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 562 (7th Cir. 2005).

The Novaks' factual allegations simply do not make out a plausible claim against Levenfeld. It is true that the Complaint recounts, in great detail, letter, e-mail, and in-person communications between Levenfeld and Novak (and the Novaks' attorney when they were represented) dealing with the parties' various disputes. Compl. ¶¶ 22-23, 25-29, 31. Yet with each of these communications, the Complaint merely describes Levenfeld either imparting the position of its client or making a representation on its client's behalf. *See, e.g.*, *id.* ¶¶ 22 (informing Novaks that Association would not impose a fine), 25 (proposing in-person meeting to avoid more litigation), 28 (summarizing Association's responses to Novak's various requests), 31 (conveying Association's refusal to allow service dog in common areas). Without anything more, all that these actions show is Levenfeld carrying out its legal representation of the Association, as does the fact that the law firm filed the state-court action on behalf of its client. "Mere legal representation of a third party who allegedly violated plaintiff's fair housing rights . . . does not give rise to an actionable claim." *Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, 151 F. Supp. 2d 1254, 1259 (D. Kan. 2001) (dismissing FHA claim against attorney based solely on allegations he wrote letter and filed restraining order on behalf of client accused of housing discrimination).

To rescue their claim, the Novaks add allegations in their opposition brief, to the effect that Levenfeld "tried to trick" Novak into signing the September 2007 settlement agreement and filed suit against the Novaks "even though it knew their client," the Association, "did not have standing to sue." Pls.' Levenfeld Br. at 16.

Even if these allegations were properly pled and included in the Complaint, *see Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013), they would be merely conclusory allegations that are not entitled to the assumption of truth. *See Iqbal,* 556 U.S. at 678-79; *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001) (court "not obliged to accept as true conclusory statements of law or unsupported conclusions of fact"). This is especially true because the Novaks are alleging that Levenfeld was trying to perpetrate a fraud, and Federal Rule of Civil Procedure 9(b) requires particularized allegations to adequately state such a claim.

To be clear, this holding does *not* suggest that there is no circumstance in which an attorney representing a defendant in a discrimination suit might independently violate Section 3617. Here, however, because the Novaks do not allege facts showing that Levenfeld did anything more than represent its client, let alone engage in a pattern of invidiously-motivated harassment, the FHA claims against Levenfeld are dismissed.

## 2. Untimeliness

Although the FHA claims against Levenfeld are dismissed based on the merits (or lack of merits) as described, it is also clear that the claims are time-barred. A statute-of-limitations defense ordinarily is not a proper basis for a Rule 12(b)(6) motion to dismiss, *see Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012), but it "is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint

plainly reveals that an action is untimely,"[12] *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (internal citations and quotations omitted).

A two-year statute of limitations applies to FHA claims. 42 U.S.C. § 3613(a)(1)(A). So long as a claim is filed within two years following the "last asserted occurrence" of a discriminatory pattern under the FHA, earlier acts committed as part of that ongoing pattern or practice will also remain actionable. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982); *accord Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 972-73 (N.D. Ill. 2004). But here the Novaks' Complaint does not include allegations of discriminatory conduct attributed to *Levenfeld* within the two-year period before this case was initiated in December 2013. The allegedly harassing communications from Levenfeld to the Novaks occurred in 2007 and 2008. Compl. ¶¶ 22-23, 25-29, 31. Levenfeld filed the state-court suit in 2008 and all claims brought *against* Novak were voluntarily dismissed in May 2011. *Id.* ¶¶ 30, 38.

The Novaks argue that their claims were tolled when they filed their administrative complaint in October 2010. Pls.' Levenfeld Br. at 11-12 (citing 42 U.S.C. § 3613(a)(1)(B)). But that complaint named as a respondent only the Association, not Levenfeld, so any claims against Levenfeld were not tolled by the IDHR complaint. *See* IDHR Compl. Also unavailing are the Novaks' contentions that their claims should be equitably tolled. Contrary to their assertions made in their brief, Pls.' Levenfeld Br. at 12, there is no basis in the allegations to find that

---

[12]Because the statute of limitations is an affirmative defense, strictly speaking the procedural vehicle for a dismissal on these grounds is a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Richards*, 696 F.3d at 637-38.

the Novaks were fraudulently dissuaded from going to federal court, or that their disability kept them from doing so. Indeed, the long history of administrative proceedings and federal-court and state-court litigation initiated by the Novaks against Defendants belies that argument. All in all, the Novaks' FHA claims against Levenfeld are barred by the statute of limitations.

## C. State Law Emotional Distress Claims

Defendants seek dismissal of the Novaks' intentional and negligent infliction of emotional distress claims for failure to state a claim and as untimely. Ass'n Defs.' Br. at 12-15; Levenfeld Br. at 10-15. The emotional-distress claims are dismissed, for reasons that the Court addresses in turn.

### 1. Intentional Infliction of Emotional Distress

Under Illinois law, the tort of intentional infliction of emotional distress requires several elements. "First, the conduct involved must be extreme and outrageous. Second, the actor must intend that his conduct cause severe emotional distress or be aware of a high probability of causing severe emotional distress. Third, the conduct must actually cause severe emotional distress." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). "For conduct to be extreme and outrageous it must go 'beyond all bounds of decency' and be 'considered intolerable in a civilized community.'" *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (quoting *Lopez v. City of Chicago*, 464 F.3d 711, 721 (7th Cir. 2006)). The Novaks' pleadings are insufficient to meet this high threshold.

The Complaint alleges that as a result of Defendants' actions, the Novaks suffered "humiliation, mental anguish, and attendant bodily injury, such as stomach aches, headaches, and sleep loss." Compl. ¶ 45. But the conduct described—Defendants' disputing whether the service dog may be in common areas, charging the Novaks with some rules violations and imposing fines, and filing a lawsuit—does not on its face rise to an extreme and outrageous level, as defined by Illinois law. *See Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 813 (N.D. Ill. 2011) (allegations that condo association notified plaintiffs about alleged rules violations and did not provide sufficient accommodation for support animal did not rise to level of intentional-distress claim); *Roseborough v. Cottonwood Apartments*, No. 94 C 3708, 1994 WL 695516, at *3-4 (N.D. Ill. Dec. 9, 1994) (failure to accommodate alone insufficient). The Novaks surely feel aggrieved in the course of this long-running dispute, including by the allegedly "threatening" tone of Defendants during an in-person meeting, Compl. ¶ 27, but this is not enough under Illinois law, which binds this court. *See Cavalieri-Conway v. L. Butterman & Assocs.*, 992 F. Supp. 995, 1010-11 (N.D. Ill. 1998) (allegation that fair housing plaintiff suffered "insults and the disfavor of building management" insufficient to state a claim). *See generally McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (intentional-distress claim "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (citation omitted). More understandably, the Novaks were upset that the Association went to the state court in search of an order compelling them to sell their home, but even this attempt to

effectively evict them is not, without more, actionable as an intentional-distress claim. *See Anast v. Commonwealth Apartments*, 956 F. Supp. 792, 803 (N.D. Ill. 1997) (conduct of landlord, including evicting and having mentally-ill tenant arrested, while "most unfortunate . . . does not rise to the level of extreme and outrageous").

The Novaks counter that, when viewed in the context of their vulnerability to the power the Association possessed to control their living conditions, Defendants' conduct was extreme. Pls.' Ass'n Br. at 12-13. It is true that a defendant's abuse of a position of power is a factor that is relevant to the relative outrageousness of the defendant's actions. *Fox*, 600 F.3d at 842. But even taking into account this consideration, no reasonable jury could find that Defendants' behavior, as described above, subjected the Novaks to the kind of severe and intolerable distress required under Illinois law. *See Stevens*, 836 F. Supp. 2d at 813 (although condo board's position of authority should be considered, claims merely based on dispute over accommodation and rules still insufficient). Accordingly, the intentional-distress claims against all Defendants are dismissed.

### 2. Negligent Infliction of Emotional Distress

The Novaks' alternative claims that Defendants committed negligent infliction of emotional distress are also deficient. In Illinois, negligent-distress claims require the same inquiry into duty, injury, causation, and damages as standard negligence claims. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009). Under the so-called "impact rule," articulated by the Illinois

Supreme Court, direct victims of negligently-imposed distress (the Novaks allegedly are direct victims, as distinct from "bystander" victims) cannot recover unless their emotional distress "was accompanied by a contemporaneous physical injury to or impact on the plaintiff." *Rickey v. Chicago Transit Auth.*, 457 N.E.2d 1, 2 (Ill. 1983); *accord Lewis*, 561 F.3d at 703 (clarifying that although direct victims do not need to show *lasting* physical manifestations of injury from the negligent conduct under the impact rule, physical injury or impact contemporaneous to the conduct is still required).[13] That element is absent from the Novaks' pleadings.

The "contemporaneous physical injury or impact" rule requires what its words suggest: "some form of physical danger or harm as the catalyst for the resulting emotional trauma." *Barnes v. Anyanwu*, No. 00 C 6280, 2009 WL 2031798, at *3 (N.D. Ill. July 10, 2009) (citation omitted), *aff'd*, 391 F. App'x 549 (7th Cir. 2010). Even construed as broadly as possible, the Novaks' allegations do not establish the existence of this kind of initial, distress-triggering injury. The fines and liens imposed by Defendants, the state-court lawsuit, the Association's refusal to make an accommodation for the dog—these could be said to have had an "impact"

_____

[13]Some confusion about this rule was created by *Pasquale v. Speed Prod. Eng'g*, where the Illinois Supreme Court stated in *dicta* that one of its earlier decisions had eliminated the contemporaneous physical injury or impact requirement for direct, as well as bystander, victims of negligently imposed distress. 654 N.E.2d 1365, 1371-72 (Ill. 1995) (interpreting *Corgan v. Muehling*, 574 N.E.2d 602 (Ill. 1991)). The Seventh Circuit has repeatedly reiterated, however, that this characterization is inaccurate and that the impact rule still applies under Illinois law. *See Barnes v. Anyanwu*, 391 F. App'x 549, 553 (7th Cir. 2010) ("Despite this consistency on our part, not all Illinois courts, including some federal district courts, have applied the impact rule to direct victims."); *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002); *Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380, 1384-85 (7th Cir. 1993); *see also Fenner v. Favorite Brands Int'l, Inc.*, No. 97 C 5906, 1998 WL 249232, at *7 (N.D. Ill. May 12, 1998) (clarifying that *Corgan* only removed the requirement of a physical manifestation of emotional distress, "not the requirement she suffer a physical impact or injury in the first place").

on the Novaks, certainly, but in the sense that they were mentally taxing. The refusal to allow the dog in common spaces might have forced the Novaks to use the freight elevator, but causing this kind of hardship is not the same as inflicting physical harm. *See, e.g.*, *Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 888 (N.D. Ill. 1999) (even plaintiffs who had to move out, after defendant-banks provided erroneous tax information leading to the forced sale of their house, may have been "physically affected" as consequence of negligence, but did not suffer physical injury contemporaneous to allegedly negligent act). Accordingly, the Complaint's negligent-distress claims must be dismissed for failure to state a claim.

### 3. Untimeliness

Additionally, the Novaks' emotional-distress claims are plainly time-barred. Both intentional-distress and negligent-distress claims are governed by a two-year statute of limitations under Illinois law. *See* 735 ILCS 5/13–202 (governing personal-injury claims). Because they filed suit in December 2013, the Novaks must allege conduct in or after December 2011 for it to be actionable. As discussed above, the Complaint alleges no such conduct in the relevant period attributable to Levenfeld. As to the Association Defendants, the only possible mention of such conduct occurs in the allegation that the Novaks were falsely accused of violating Association rules twelve times between January 2007 and January 31, 2013. Compl. ¶ 39. But the Complaint does not state when any of those twelve instances of alleged rules violations actually occurred, and whether any occurred during the

limitations period. The Complaint is untimely on its face, so the limitations problem is an alternative basis for dismissal of the emotional-distress claims.

## D. No Leave to Amend

Finally, the Court considers whether the Novaks should be given leave to amend their pleadings in order to try and resuscitate the claims that are being dismissed, namely, all claims against Levenfeld and the state-law claims. Amendments at this stage may only be made with consent of the opposing party or leave of the court, which should be freely given "when justice so requires." Fed. R. Civ. P. 12(a)(2). A district court need not provide such leave where it is not sought, *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 401 (7th Cir. 2006), and the Novaks did not explicitly move for leave to amend. But they do state in their opposition brief to Levenfeld's motion that they "will amend their Complaint if it becomes necessary." Pls.' Levenfeld Br. at 14. Given the "special responsibility" owed to *pro se* litigants, under which a district court "must allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim," *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996), the Court proceeds *sua sponte* to consider whether to provide a chance to amend.

To begin, the Novaks give no hint of how they might amend their pleadings to pass muster. The Novaks' assurance, without any explanation or content, that they can amend "if it becomes necessary" is inadequate to support another bite at the apple. *See, e.g.*, *James Cape & Sons Co.*, 453 F.3d at 401 (district court properly

dismissed with prejudice as statement that plaintiff will "describe in even greater detail the damages it suffered" was insufficient and court "had no way of knowing what the proposed amendment entailed"). "District courts do not have to engage in guessing games about proposed amendments." *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000).

Indeed, the Novaks' submissions suggest that there are no viable amendments *to* propose. As discussed above, the Novaks' conclusory allegations that Levenfeld masterminded a conspiracy to discriminate against them amounted to no more than a description of ordinary legal representation on behalf of Levenfeld's client. It is evident from the Novaks' opposition brief that there are no additional facts that could possibly color a claim that the law firm engaged in discriminatory conduct independent of that representation. Similarly without prospect are the state-law claims, given the Novaks' inability to state basic elements of those causes of action, namely, extreme and outrageous conduct in the case of an intentional-distress claim and a contemporaneous physical injury in the case of a negligent-distress claim. Where amendment would be futile in this way, a court may withhold leave to amend. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007) ("An amendment is futile if the amended complaint would not survive a motion for summary judgment.") (citing *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)); *see also Sound of Music Co. v. Minnesota Min. & Mfg. Co.,* 477 F.3d 910, 923 (7th Cir. 2007) (denial of leave to amend proper where plaintiff could not have established elements of claim).

Accordingly, the dismissal of the Novaks' causes of action against Levenfeld and their state-law claims is with prejudice and without opportunity to amend the pleadings.

## III. Conclusion

For the reasons explained above, the Association Defendants' motion to dismiss or to stay as to the federal claims is denied. The limited exception is for the two discrete claims discussed above that are currently pending in Illinois administrative proceedings. Discovery on those two claims only is stayed. The Association Defendants' motion to dismiss as to the state-law claims is granted. Levenfeld's motion to dismiss is granted in its entirety. The September 26, 2014 status hearing remains in place, at which time a discovery schedule will be set. The parties (including Levenfeld) are also directed to begin settlement discussions and consider whether a settlement-conference referral to the magistrate judge makes sense, now that this opinion has narrowed (but not eliminated) the case. Lastly, the Court reminds the Novaks, and in particular Michael Novak, of the August 21, 2014 order, R. 89, prohibiting the Novaks from using any profanity or making any personal attacks on any counsel in this litigation.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 15, 2014