| | | |
|---|---|---|
| MICHAEL NOVAK, CHRISTINA NOVAK, and their daughter, T.N., | ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 08861 |
| v. | ) ) ) | Judge Edmond E. Chang |
| STATE PARKWAYCONDOMINIUM ASS'N, THE BOARD OF THE STATE PARKWAY CONDOMINIUM ASS'N, DONNA WEBER, and LIEBERMAN MANAGEMENT SERVS., INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This Order decides three motions in this contentious case brought under the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*[1] *Pro se* Plaintiffs Michael and Christina Novak, who are hearing-impaired, and their minor daughter T.N. allege that Defendants—the State Parkway Condominium Association, its Board of Directors, the property management company, and the building manager—discriminated and retaliated against Plaintiffs. R. 1, Compl. ¶ 1.[2] Defendants move to dismiss T.N. as a party, on the basis that she lacks standing to sue, R. 126, Mot. Dismiss T.N., and to dismiss the condo board as improperly named, R. 128, Mot. Dismiss Bd. The third pending motion was filed by Plaintiffs, who move to lift a stay of discovery that is now in place on two discrete issues that have also been raised in Illinois administrative proceedings. R. 140, Pls.' Mot. Lift Stay. For the

---

[1] Subject matter jurisdiction is proper under 28 U.S.C. § 1331.

[2] Citations to the docket are indicated as "R." followed by the entry number.

reasons described below, the motion to dismiss T.N. is denied, the motion to dismiss the Board of Directors is granted, and the motion to lift the stay is denied.

## I. Background

The nature of the Novaks' claims and the fractious history of the parties' conflict—which has spanned years in a variety of federal and state fora—are recounted in detail in the September 2014 order [R. 99] that granted in part and denied in part Defendants' prior motions to dismiss the complaint. *Novak v. Levenfeld Pearlstein*, 2014 WL 4555581, at *1-3 (N.D. Ill. Sept. 15, 2014). The Court dismissed all claims against the condo association's attorneys, whom the Novaks had alleged were equally liable for discriminatory acts, for failure to state a claim. *Id*. at *6-7. The Novaks' state-law emotional distress claims were similarly dismissed, leaving only the federal Fair Housing claims alive in this action. *Id*. at *8-10. By contrast, although Defendants asserted that claims against the Board of Directors were also invalid because the Board is not a suable entity, the Court declined to dismiss it as a party because Defendants did not develop the argument and cited no authority in support of their contention. *Id*. at *1 n.2.

The Court also declined to dismiss the Novaks' claims on the basis of administrative proceedings that they had initiated with the Illinois Department of Human Rights and the Illinois Human Rights Commission. *Id*. at *4-6. First, these proceedings did not lead to issue preclusion of the Novaks' present claims because, even assuming that state administrative findings in FHA claims *could* preclude a suit in federal court (a question as yet undecided by the Seventh Circuit), the

Commission, which sustained the Department's earlier dismissal of the Novaks'

administrative complaint by a voice vote in October 2013, had not yet issued a final

written order of dismissal (which may itself be subject to state court review) as of

the issuance of the September 2014 opinion—meaning that any preclusion

argument was premature.[3] *Id*. at \*4. Second, abstention by the Court from

exercising jurisdiction over the Novaks' claims based on prudential concerns raised

by the Commission's proceedings was not warranted because, contrary to

Defendants' characterization, the precise claims raised with the Department and

the Commission were not in fact, for the most part, parallel with those pending in

this action. *Id*. at \*5. The Court did, however, stay discovery as to two discrete

issues that did overlap with allegations made in the Novaks' present complaint:

whether Defendants had refused (1) to provide the Novaks with Communication

Access Realtime Translation (CART) services to accommodate their hearing

impairment at a 2010 noise-violation hearing, and (2) to accommodate the Novaks'

service dog in retaliation for filing a 2007 discrimination complaint.[4] *Id*. at \*5-6.

---

[3] The Court added, however, "[t]he parties may revisit these [stayed] claims, and their impact on the present litigation" once the state proceedings became final, thus properly raising the issue preclusion question. *Novak*, 2014 WL 4555581, at \*5.

[4] The Court denied a motion by Defendants to expand the stay to include a host of other claims raised in this action, rejecting the argument that they had been also been put before the IHRC by the Novaks through subsequent submissions made after the IDHR's initial denial of their charge. R. 133, Order dated Nov. 28, 2014 at 2-3 (finding that record did not show that IHRC considered these broader claims, which in any event were presented, likely improperly, *de novo* to IHRC instead of on review after IDHR's findings).

## II. Discussion

### A. Defendants' Motion to Dismiss T.N.

Defendants move to dismiss the Novaks' daughter T.N. from the action, asserting that she is not hearing-disabled and thus lacks standing to bring discrimination claims under the FHA. Mot. Dismiss T.N. ¶ 4. Defendants point out that T.N. does not require a service animal, CART services, or other reasonable accommodations, which are the premise of the adult Novaks' claims. *Id.* The Novaks counter that the scope of actionable injury and proper plaintiffs under the FHA must be understood in "the broadest possible terms," and cover T.N.'s involvement in the suit. R. 138, Pls.' Resp. Mot. Dismiss T.N. ¶ 6. The Court concurs with the Novaks that Defendants' view of standing under the FHA is overly cramped.

Under the FHA, "[a]n aggrieved person may commence a civil action … to obtain appropriate relief with respect to [a] discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). An aggrieved person includes any individual who "claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). Consistent with this open-ended definition, the Supreme Court has repeatedly counseled that "Congress intended standing under [the FHA] to extend to the full limits of Art. III and that the courts accordingly lack the authority to create prudential barriers to standing in suits brought under" the FHA. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n.9, 109 (1979)) (internal quotation marks omitted). The sole criterion for standing to sue under the FHA is, as laid out by Article III of the

Constitution, the "minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury[.]'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Thus, a FHA plaintiff need only establish that: she suffered an "an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent"; there is a "causal connection between the injury and the conduct complained of," and; it is likely that "the injury will be redressed by a favorable decision." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 751 (7th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As a result, housing discrimination cases are replete with examples of plaintiffs with proper standing to sue who, under an ordinarily more restrictive view of injury, might have been shut out of federal court. *See Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209-10 (1972) (white tenant has standing alongside black tenant who was direct subject of discrimination based on "loss of important benefits from interracial associations" inflicted on all residents); *Gladstone*, 441 U.S. at 110-11, 115 (village government was injured by loss of reduced property values caused by exclusion of blacks); *Havens*, 455 U.S. at 369 (non-profit organization has standing to challenge realtor's discriminatory steering practices against prospective tenants because its resources must be expended to combat those actions).

In any event, it is not necessary to rely on an attenuated view of injury in order to be satisfied that T.N. meets the requirements of FHA standing. On the face of the allegations, she has been subjected to direct harm. "In ruling on a motion to

dismiss for lack of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor[.]" *Reid L. v. Illinois State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004). Here, the complaint alleges that the Defendants have discriminated against the Novaks by refusing to accommodate the couple's disability with CART services, attempting to force the sale of their home, levying unjustified fines and a lien on their condo, and otherwise coercing and threatening them. *See* Compl. ¶¶ 13-61.

True, T.N. herself has no need of CART services at homeowners' association meetings, nor does she herself use her parents' service animal. But T.N. would suffer a concrete and actual injury—the loss of her home—as a direct result of a discriminatory effort to force the Novaks to sell their condo and leave the building. Although T.N. does not have an ownership interest in the home (at least not according to the complaint), discriminatory and retaliatory fines and liens encumber the entire property—again T.N.'s home as much as it is her parents—and inflict a financial injury that can be fairly characterized as shared by T.N. Finally, although T.N. herself may not need the use of the family's guide dog, unlawful restrictions on her parents' ability to take the animal into common areas of the building (which many apartment dwellers regard as a shared extension of their homes) are in effect restrictions on her: there is distinct and palpable harm in the stigma suffered by a minor who cannot walk through her own lobby with her parents and instead must accompany them through a back door and up a service elevator. *See generally*, Robert G. Schwemm, HOUSING DISCRIMINATION LAW AND LITIGATION § 25:5 (2014)

(discussing nonmonetary injuries such as humiliation and embarrassment, long accepted by courts under the FHA and outlined in statutory and regulatory text).

Contrary to Defendants' assertions then, T.N.'s "equal opportunity to use and enjoy the dwelling" is very much tied to the accommodations that have been allegedly withheld, and success in this lawsuit would convey a direct benefit on her as much as on her parents. R. 163, Defs.' Reply Mot. Dismiss T.N. ¶¶ 5, 7. Indeed, it is simply impossible to deny that children who live with parents who are the subjects of housing discrimination are often (if not always) affected just as much by discriminatory acts aimed at restricting and ending the use of enjoyment of a home. *See, e.g.*, *The Fair Hous. Council of San Diego, Joann Reed v. Penasquitos Casablanca Owner's Ass'n*, 381 F. App'x 674, 676 (9th Cir. 2010) (upholding standing of children who "witnessed instances of sexual assault, suffered from emotional disturbances, were generally confined to their home, and no longer used the housing complex's amenities as a result of the [defendants'] ongoing sexual harassment"); *United States v. Henry*, 519 F. Supp. 2d 618, 622 n.7 (E.D. Va. 2007) (minor children were "aggrieved persons" with standing to intervene in case brought on behalf of their parents for alleged discriminatory practices, including imposition of "quiet time" only on black residents). *Cf. Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 544 (6th Cir. 2014) (affirming standing of parents to bring suit in individual capacities for alleged housing discrimination suffered by their children). Because T.N. would suffer direct injury by the alleged actions of

Defendants, she has established her standing to remain a plaintiff in the action, and Defendants' motion to dismiss her as a party is denied.

## B. Defendants' Motion to Dismiss Board of Directors

### 1. Board of Directors is an Improper Party

Turning to Defendants' motion to dismiss the Board of Directors, the Court concludes that the Board must be dismissed as a non-suable entity. This time around, Defendants offer authority in support of their position. Defs.' Mot. Dismiss Bd. of Dir. ¶ 2. "Under Illinois law, a corporation's board of directors is not a legal entity separate and distinct from the corporation itself, and thus is not amenable to suit." *Edwards v. Lake Terrace Condo. Ass'n*, 2011 WL 1548023, at *2 (N.D. Ill. Apr. 21, 2011) (citing *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1280 (Ill. App. Ct. 2005)). Although *individual* board members of a non-profit corporation, like a homeowners' association, may be held liable for certain acts involving willful or wanton conduct, a board may not be held liable as a collective entity. *Willmschen*, 840 N.E.2d at 1280 (citing 805 ILCS 105/108.70).

The cases cited by Plaintiffs do not undermine this principle. *Taghert v. Wesley* affirmed the ability of condo board members to be sued individually and in their official capacity as board members under Illinois law, rather than target the board itself as a collective party. 799 N.E.2d 377, 380 (Ill. App. Ct. 2003). And although *LaSalle Nat. Trust, N.A. v. Bd. of Directors of the 1100 Lake Shore Drive Condo.* ,speaks of "liability for the Board and its individual members," it is in the limited context of breaches of fiduciary duty related to the management of a

homeowners' association under the Illinois Condominium Property Act, 765 ILCS 605. 677 N.E.2d 1378, 1382 (Ill. App. Ct. 1997) (citation omitted); *accord Carney v. Donley*, 633 N.E.2d 1015, 1022 (Ill. App. Ct. 1994). This provision does not appear to undo the general common-law principle that a board of directors can neither sue in its own name nor be sued. *See Willmschen*, 840 N.E.2d at 1280 (surveying authority from other states).

Generally speaking, this rule is not prejudicial to a plaintiff as a practical matter. As is the case here, for instance, the homeowners' association, which is the appropriate defendant in terms of corporate liability, can be named as a party. *See CHA v. Bd. of Directors of Enclave at Galewood*, 2011 WL 1134249, at *3 (N.D. Ill. Mar. 16, 2011) ("[W]here a board of a homeowners' association has been subject to suit, the appropriate defendant is the Master Association itself."). What's more, the individual board members are not exempt from suit, so if the intent is to sue particular members for their personal conduct, the inability to name them collectively as the board of directors is of no real moment. For all these reasons, the Board of Directors is dismissed as a party to this lawsuit.

## 2. A Proper Motion for Leave to Amend Is Required

Asserting in their response brief that they wanted to sue particular members of the State Parkway Board of Directors all along, Plaintiffs belatedly request leave to amend their complaint to do so. R. 139, Pls.' Resp. Mot. Dismiss Bd. of Dir. ¶ 15. Amendments at this stage may only be made with the consent of the opposing party or with leave of the court under Federal Rule of Civil Procedure 15(a)(2), but a

"special responsibility" is owed to *pro se* litigants, under which a district court must "allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Defendants oppose Plaintiffs' request, arguing in their reply brief that at no point in the protracted course of the present litigation and preceding administrative proceedings did Plaintiffs put any such individuals on notice that they would be named. R. 162, Defs.' Reply Mot. Dismiss Bd. of Dir. ¶ 5. Defendants further argue that an amendment to insert individual board members would be futile because the statute of limitations for claims against them has long run. *Id*. Plaintiffs counter that their claims against the board members were tolled by their administrative complaint filed in 2010. Pls.' Resp. Mot. Dismiss Bd. of Dir. ¶ 15 n.2.

At first blush, the Court notes that the issue of futility on timeliness grounds is not as straightforward as the parties represent. For instance, although the statute of limitations under the FHA is two years, 42 U.S.C. § 3613(a)(1)(A), there are the added variables of the tolling of claims during administrative proceedings, 42 U.S.C. § 3613(a)(1)(B), and the possible relation-back of amendments in the event of joinder of new parties, Fed. R. Civ. P. 15(c)(1)(C), which complicate matters for the various purported claims and proposed defendants at play here. (Importantly, perhaps, the administrative complaint did not name the individual board members.) In any event, the Court will reserve decision until Plaintiffs have made a proper motion for leave to amend rather than act on a request imbedded in

a response brief, so that the parties may properly brief the issues related to naming individual board members at this stage, including its possible futility or the possible undue delay in requesting leave.[5] The briefing schedule for this motion is set at the conclusion of this order.

## C. Plaintiffs' Motion to Lift Stay

The Novaks seek to lift the stay of discovery that the Court imposed on two issues, specifically, the denial of CART services at a 2010 hearing and the refusal to accommodate the Novaks' service animal in alleged retaliation for a 2007 complaint. Pls.' Mot. Lift Stay ¶ 3. As explained here, the motion is unfounded at this time. In September 2014, the Court determined that a stay was appropriate because the Human Rights Commission was on the verge of deciding these two identical claims, which represented the only overlap between the Novaks' state administrative and federal court actions. *Novak*, 2014 WL 4555581, at *5 (quoting *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009)). The Novaks argue now, as they did back in September, that the Court should exercise jurisdiction over these claims regardless of the Commission's decision, relying on case law that states that

---

[5] Defendants state that they will shortly move to dismiss Lieberman Management Services, Inc. and Donna Weber, the property management company and building manager. Defs.' Reply Mot. Dismiss Bd. of Dir. ¶ 5 n.2. In the interest of streamlining this litigation, which has already seen a stream of piecemeal motions, the Court will entertain that motion only after it has resolved Plaintiffs' forthcoming motion for leave to amend their complaint to add potential new defendants. That way, as it is possible that Defendants may move to dismiss the claims against newly named individual board members (should leave to amend be granted), multiple motions will be avoided. This combined motion to dismiss certain parties should also be brought in conjunction with Defendants' potential motion to dismiss the two stayed issues on preclusion grounds, as described in the following section. This plan of attack represents the most efficient manner of streamlining the claims and teeing up the remainder of this litigation.

whatever the Commission decides should have no bearing on the adjudication of their action in federal court. *See Morales v. Goodwill Indus. of Se. Wis., Inc.*, 2014 WL 4914255, at *5 (N.D. Ill. Sept. 30, 2014) ("[U]nreviewed decisions by state agencies are not entitled to preclusive effect as to [Americans with Disabilities Act] claims brought in federal court[.]"); *see also Mitchell v. Cellone*, 389 F.3d 86, 91-92 (3d Cir. 2004) (holding tenants could bring FHA suit in federal court, despite previously filed administrative complaint that led to state court action).

But as the Court has already noted, in spite of the district court's opinion in *Morales* and the Third Circuit's opinion in *Mitchell*, neither of which is binding precedent, the preclusive effect of unreviewed agency decisions (on determinations of both law and fact) remains an open question in this Circuit. *Novak*, 2014 WL 4555581, at *4 (citing *Sokoya v. 4343 Clarendon Condo Ass'n*, 1996 WL 699634, at *3-5 (N.D. Ill. Nov. 27, 1996) (common-law administrative preclusion applies to IHRC and FHA)); *see also Allahar v. Zahora,* 59 F.3d 693, 696 (7th Cir. 1995) ("Agency decisions may have a preclusive effect, *but only in the limited area of factfinding*.") (emphasis added). In any event, because the Commission's decision was not yet final, the Court could not resolve that question and purposefully stayed discovery on the two issues on prudential grounds until the Commission issued its written order of dismissal. *Novak*, 2014 WL 4555581, at *5. Now that it has been finally issued, R. 167-1, IRHC Order dated Feb. 9, 2015, the question is closer to being ripe for presentation to the Court.

Closer, but not quite there: the Commission's final order of dismissal is reviewable by the Illinois state courts, 775 ILCS 5/8-111(B)(1), and whether the Novaks exercise their prerogative to take such an appeal will determine our next steps. If the Novaks do take an appeal, then the appropriate Illinois courts will adjudicate the two claims, which will almost certainly have preclusive effect in this federal action. *See Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009) ("State court judgments are entitled to recognition by federal courts and are entitled to preclusive effect.") (citing 28 U.S.C. § 1738). If the Novaks do not appeal to the state courts, then the Commission's findings will be the final word as far as the state proceedings are concerned, and the Court anticipates that either Defendants will renew their motion to dismiss these two claims on preclusion grounds or Plaintiffs will renew their motion to lift the stay on the grounds that preclusion should not apply. Only then will the Court be in a position to resolve the question of issue preclusion and unreviewed state agency decisions.

Either way, the appropriate course is to maintain the stay until we know which of these two scenarios plays out. As the deadline by which the Novaks must appeal the Commission's order, if they wish to do so, is 35 days from the date that a copy of the decision was served, and the Novaks state that they received a copy on February 14, 2015, R. 168, Pls.' Reply Mot. Lift Stay ¶ 1, we will have clarity in short order. Accordingly, the Novaks' motion to lift the stay of discovery on the two discrete issues that overlap with the IHRC proceedings is denied without prejudice.

13

## III. Conclusion

For the reasons given above, Defendants' motion to dismiss T.N. [R. 126] is denied, Defendants' motion to dismiss the Board of Directors [R. 128] is granted, and Plaintiffs' motion to lift the stay on discovery of the two discrete issues [R. 140] is denied without prejudice.

If Plaintiffs still wish to ask for leave to amend the complaint to name individual Board members, then Plaintiffs must file the motion for leave to do so by March 16, 2015. Defendants shall file a response by March 30, 2015 and Plaintiffs may reply by April 8, 2015. Only after the Court has decided this motion may Defendants then file a motion to dismiss certain claims and parties as described above.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 6, 2015