UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL NOVAK, CHRISTINA NOVAK, and their daughter, T.N., | ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 08861 |
| v. | ) ) ) | Judge Edmond E. Chang |
| STATE PARKWAY CONDOMINIUM ASS'N, DONNA WEBER, and LIEBERMAN MANAGEMENT SERVS., INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

After several false starts, a question long lurking in the background of this housing-discrimination action is now properly before the Court: whether state administrative findings, in this case made by the Illinois Department of Human Rights and affirmed by the Illinois Human Rights Commission, are entitled to preclusive effect in actions brought in federal court under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*[1] Among the various allegations raised by *pro se* Plaintiffs Michael and Christina Novak (they are also suing on behalf of their minor daughter T.N.) are two specific claims that were the subject of Illinois administrative proceedings: that the Novaks, who are hearing impaired, were (1) denied real-time transcription services at a condo association hearing in 2010, and (2) subjected to a retaliatory refusal to accommodate their service dog. The remaining Defendants—the State Parkway Condominium Association; its property management company,

---

[1]Subject matter jurisdiction is proper under 28 U.S.C. § 1331.

Lieberman Management Services; and the building manager, Donna Weber—move for partial summary judgment on these two discrete claims, which have been the subject of a discovery stay (and several premature motions) while the administrative proceedings ran their course. Because a final agency order has now been issued and the Novaks have withdrawn an Illinois state-court appeal of that decision, the Court can at last resolve the fate of these two claims. The Court need not, however, directly decide whether administrative issue preclusion can apply in the fair-housing context, because (as explained below), the Court holds that, even assuming issue preclusion can arise from an agency determination, Defendants have failed to show that the Novaks received the judicial-type procedural safeguards required to invoke issue preclusion. For the reasons given below, these claims survive and the motion for partial summary judgment is denied.

## I. Background

### A. Claims at Issue

The Novaks' factual allegations in this long-lasting and highly contentious case arise from, among other things, various disputes about accommodations for the Novaks' hearing disability and charges of harassment and retaliation. The allegations are wide-ranging and spelled out in detail in the Court's September 2014 Opinion [R. 99], which granted in part and denied in part Defendants' motion to dismiss. *See Novak v. Levenfeld Pearlstein*, 2014 WL 4555581, at *1-3 (N.D. Ill. Sept. 15, 2014) (dismissing conspiracy-theory claims raised against condo association's law firm and certain state-law claims against remaining Defendants).

The present motion concerns only two of the Novaks' several claims, and it is to these two discrete issues that the following discussion is limited. Because Defendants seek summary judgment, the evidence is viewed in the light most favorable to the Novaks and all reasonable inferences are drawn in their favor. That said, the material facts are not really in dispute.

The first claim is that State Parkway refused to pay to provide the Novaks with Communication Access Realtime Translation (CART) services (by which a simultaneous transcript is generated, allowing deaf users to follow along with live conversations) for use at a 2010 hearing called by the condo association for an alleged noise violation by the Novaks. R. 242, DSOF ¶ 10[2]; *see also Novak*, 2014 WL 4555581, at *5-6. The second concerns whether State Parkway refused to accommodate the Novaks' use of their service dog in retaliation for the Novaks' filing a 2007 housing-discrimination complaint against the condo association. DSOF ¶ 11; *see also Novak*, 2014 WL 4555581, at *5-6.

### B. State Administrative Proceedings

Both claims were included in a complaint filed with the Illinois Department of Human Rights on November 8, 2010. *See* DSOF, Exh. 5, Housing Discrimination Compl. ¶ 7 ("Respondent denied Complainants' request for CART and would only agree if Complainants paid for CART. Complainants allege that Respondent has

---

[2]Citation to the docket is "R." followed by the entry number. Citations, if made, to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Defendants' Statement of Facts); "PSOF" (for the Novaks' Statement of Additional Facts) [R. 249]; "Pl.'s Resp. DSOF" (for the Novaks' Response to Defendants' Statement of Facts) [R. 253]; and "Def.'s Resp. PSOF" (for Defendants' Response to the Novaks' Statement of Additional Facts) [R. 260]. Where a fact is admitted, only the asserting party's statement of facts is cited.

continued to refuse to acknowledge Complainant['s] dog as a service dog … in retaliation for filing a previous fair housing complaint."). After State Parkway filed a verified response, on June 30, 2011, the Department issued a "Final Investigative Report" based on two interviews with Michael Novak (one by telephone and one in-person) and one telephone interview with the president of the condo board, as well as eight documents, including a termination notice sent to the Novaks, a few noise complaints and violation-notices, and the Novaks' written request for CART. *See* DSOF, Exh. 6, IDHR Final Invest. Rep. On the same day, the Department issued a "Determination of Lack of Substantial Evidence" to support the Novaks' complaint. DSOF, Exh. 7, IDHR Determination. In its "Findings and Conclusion" section, the Department determined that the CART claim was unfounded because the investigation revealed that the alleged noise violation that necessitated the hearing where the CART was requested had been dropped. *Id*. at 4. As for the service-dog claim, the Department found that the "investigation did not reveal that Respondent undertook one or more substantial actions against Complainants that might dissuade a reasonable person from filing a charge." *Id*. The Department also noted that because the initial complaint that had allegedly triggered the retaliation had been resolved in 2007, there was no basis to hold that the "protected activity" occurred "within such a time period as to raise an inference of retaliatory motivation." *Id*.

On August 9, 2011, the Novaks filed a request for review of the determination with the Illinois Human Rights Commission. *See* DSOF, Exh. 9, Request for Review.

4

The Commission affirmed the Department's determination in an order entered on February 9, 2015. *See* DSOF, Exh. 11, IHRC Order. The Commission also found no CART-related discrimination because "the evidence shows that the Association did agree to have CART Services present at the hearing," at least at the Novaks' expense, and the hearing had been cancelled anyway. *Id.* ¶ II. The Commission also sustained the dismissal of the service-dog claim, but on a new ground—that it was untimely. The Commission ruled that the failure to accommodate the service animal really occurred in October 2009, when the Novaks received a termination notice that "included citations for pet violations," so the Novaks should have filed their charge within one year of that date, a deadline they missed by three days. *Id.* ¶ I.

### C. Procedural History Before This Court

Meanwhile, the Novaks commenced the present action in December 2013, raising not just the two issues described above, but a broader array of discrimination allegations. *See Novak*, 2014 WL 4555581, at *1-3. The Defendants moved to dismiss the complaint on the basis of issue preclusion, arguing that the Novaks were collaterally estopped from bringing the entire federal action by the state agency proceedings. The Court noted, however, that "whether issue preclusion applies in the context of administrative findings on [Fair Housing Act] claims" is still an open question in the Seventh Circuit and, in any event, resolving the question was premature as, at that point, the Commission had yet to issue its final decision. *Id.* at *4. Moreover, if the Novaks won on those claims in the state agency, then there arguably would be no need to pursue relief on those claims in federal

5

court. Finding that only the 2010 hearing-related CART claim and the service-animal claim (as an ongoing failure to provide reasonable accommodation) overlapped with what was currently before the Commission, the Court stayed discovery "on these [two] narrow claims only (to the extent it is possible to cull them from the other claims), because their contemporaneous disposition by the agency could give rise to dueling issue-preclusion problems." *Id.* at *5.

That stay has since been the subject of motions by both sides. First, Defendants sought to expand its scope beyond the two discrete issues, asserting that the Novaks had, in their Request for Review, not only asked the Commission to review those two claims but the range of other allegations raised in this action as well. The Court rejected that contention, noting that Defendants failed to show that these broader allegations had even been properly considered by either the Department or the Commission. *See* R. 133, Order dated Nov. 28, 2014 at 2-3 (refusing to broaden the stay where Defendants' relied on contents of *ex parte* correspondence between the Novaks and the Commission and on a minute entry showing voice vote by the Commission against the Novaks, without specifying what was considered by the Commission). Second, the Novaks moved to lift the stay all together, arguing (as it already had in response to the initial motion to dismiss) that federal courts need not give preclusive effect to the Commission's administrative findings. The Court explained again in a March 2015 order [R. 187] that this question remained unresolved in this Circuit, but observed that, as the Commission had recently issued its written order in February, the issue was nearly ready for

6

resolution. *Novak v. State Parkway Condo. Ass'n*, 2015 WL 1058014, at *5 (N.D. Ill. Mar. 6, 2015). The final barrier to considering the argument was uncertainty about whether the Novaks would continue to pursue an appeal of the Commission's order in the Illinois courts, an appeal they filed in February 2015. *See* DSOF, Exh. 12, Pet. Review. If so, the Novaks would effectively put all their eggs in that basket as, the Court noted, there is little controversy that a state-court *judgment* (as potentially distinct from an *agency* finding) is entitled to preclusive effect in federal courts. *Novak*, 2015 WL 1058014, at *5. If the Novaks instead opted not to pursue their appeal in the Illinois courts, however, the Court noted that "the Commission's findings will be the final word as far as the state proceedings are concerned," not a state tribunal's, meaning the Court would have to confront the preclusive effect of state administrative findings. *Id*.

The Novaks chose the latter route. In the Illinois Appellate Court, they moved to withdraw their appeal of the Commission's order before the appellate court had considered it on the merits. *See* DSOF, Exh. 13, Mot. Withdraw. The Novaks' motion was granted by the Illinois Appellate Court.[3] DSOF, Exh. 14, Ill. App. Ct. Order. The backdrop at last properly prepared, Defendants then filed their motion for partial summary judgment asserting issue preclusion against the two claims. R. 241, Mot. Summ. J.

---

[3]Contrary to the Novaks' characterization, the Court never "ordered" that the withdrawal motion be filed. PSOF ¶ 40. Instead, the Court noted that the Novaks faced a choice: either continue with their appeal before the Illinois courts, risking likely issue preclusion if they sought to re-litigate overlapping issues in federal court, or decline to appeal the Commission order before Illinois courts and leave the agency proceedings, with more questionable preclusive effect, in place. *Novak*, 2015 WL 1058014, at *5. The Novaks' decision to withdraw the petition from the Illinois Appellate Court was their choice.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Discussion

### A. Standard for Applying Issue Preclusion to Administrative Proceedings

Issue preclusion, also referred to as collateral estoppel, prevents "successive litigation of an issue of fact or law actually litigated and resolved in a valid court

determination essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted). It is properly invoked "when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to … the prior adjudication." *Du Page Forklift Serv., Inc. v. Material Handling Servs.*, Inc., 744 N.E.2d 845, 849 (Ill. 2001); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). The party asserting issue preclusion bears the burden of establishing its requisite elements. *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir. 1995) (citation omitted).

It is generally accepted that issue preclusion can apply to administrative-agency determinations, even absent judicial review of the agency's finding. *See United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 421-22 (1966) ("[L]anguage to the effect that *res judicata* principles do not apply to administrative proceedings … is certainly too broad."). Importantly, however, issue preclusion can only apply "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate[.]" *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (if conditions are met, courts may "apply *res judicata* to enforce repose"). "An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the

9

opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992) (citing *Buckhalter v. Pepsi-Cola Gen. Bottlers, Inc.*, 820 F.2d 892, 897 (7th Cir. 1987)).

Even where such safeguards are given to a plaintiff, however, the Supreme Court has cautioned that administrative preclusion is categorically unavailable in actions invoking claims under certain remedial statutes. These include Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. The Supreme Court has reasoned that the legislative history and statutory structure of those Acts—which mandate administrative filing as a prerequisite to bringing suit, for instance—clearly evince Congress' intent to provide plaintiffs with "the right to a trial *de novo*" in federal court regardless of past administrative filings with state agencies. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 796 & n.5 (1986) ("On the basis of … the language and legislative history of Title VII, we conclude that … Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims," even where "respondent requested the administrative hearing rather than being compelled to participate[.]"); *Solimino*, 501 U.S. at 110-11 (describing "implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims"). *See also Mathis v. Olympia Fields Ford Sales, Inc.*, 1996 WL 341398, at *4 (N.D. Ill. June 17, 1996) (administrative preclusion does not apply to the Americans with Disabilities Act because of similar structure to Title VII and ADEA). By contrast, the Supreme

Court found no such intent posed by, to take another example, the Reconstruction-era civil rights laws. *See Allen v. McCurry*, 449 U.S. 90, 98 (1980) ("[T]he legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion."). Accordingly, "[a]lthough administrative estoppel is favored as a matter of general policy, its suitability" depends on "the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Solimino*, 501 U.S. at 109-10 (citations omitted).

**B. Application to the Novaks' Fair Housing Act Claims**

As noted above, the Seventh Circuit has yet to resolve whether, like § 1983 claims, issue preclusion may be invoked on the basis of state administrative proceedings in the context of Fair Housing Act claims or whether, like Title VII and age-discrimination claims, it may not. Defendants contend two district court opinions provide direct support for the former proposition. *See Gao v. Snyder Companies*, 2010 WL 3037526, at *4 (C.D. Ill. July 13, 2010) (recognizing that issue preclusion may apply to fair-housing claims if the agency acted in a judicial capacity and a meaningful opportunity to litigate was provided, but declining to decide the issue because the defendant provided an insufficient factual record about the safeguards given to the plaintiff); *Sokoya v. 4343 Clarendon Condo Ass'n*, 1996 WL 699634, at *4-5 (N.D. Ill. Nov. 27, 1996) (noting that for fair-housing claims, unlike for Title VII claims, administrative remedies need not be pursued first by statute, that fair-housing statutory language contemplates certain deferral by federal

11

agency to state and local proceedings, and that 1988 amendment to one particular type of housing claim by Congress suggests that issue preclusion applies as default) (citing *Ward v. Harte*, 794 F. Supp. 109, 113-14 (S.D.N.Y. 1992)). But, as it turns out, the Court does not have to directly address the question for, even assuming issue preclusion could apply to the Fair Housing Act as a categorical matter, Defendants fail to establish its elements as far as the Novaks' claims are concerned.[4]

It is true, as Defendants assert, that "the issues before this Court of the CART services and the service animal are identical to the issues decided on the merits in the state agency proceedings." R. 243, Defs.' Br. at 4. But overlap in the issues is only the beginning of the analysis. To carry their burden, Defendants must also show that those proceedings were conducted by an agency acting in the requisite "judicial capacity"—that is, allowing for representation by counsel, pretrial discovery, the opportunity to file legal memoranda, cross-examinations of witnesses,

---

[4]The Novaks devote a large part of their response brief to the point that they were not required to administratively exhaust their fair-housing claims before bringing this action. R. 252, Pls.' Resp. Br. at 10-15. This emphasis misapprehends the pertinent issue. There is no doubt that fair-housing plaintiffs can elect to seek redress either in court *or* through an administrative charge. *See, e.g.*, 42 U.S.C. § 3613(a)(2) ("An aggrieved person may commence a civil action … whether or not a complaint has been filed [with the Department of Housing and Urban Development][.]"). Instead, rather than exhaustion, the question presented is what effect to give to certain administrative findings if the plaintiff does later bring a lawsuit in federal court that raises overlapping, already-decided issues. As noted above, the fact that the Fair Housing Act permits such election of remedies without an administrative-exhaustion requirement (unlike say Title VII) might actually cut against the argument that issue preclusion should not apply under the FHA. *See Sakoya*, 1996 WL 699634, at *4 ("Under the FHA, a plaintiff does not need to pursue any administrative remedies before filing suit. The opposite is true of Title VII and the ADEA, a factor the Supreme Court considers particularly important [in determining the applicability of administrative issue preclusion].") (citations omitted).

the opportunity to present and object to evidence at a hearing, and final findings of fact and law. *Reed*, 971 F.2d at 1300. Defendants have failed to make this showing.

From the administrative record provided by Defendants, it can be gleaned that the state proceedings consisted of: (1) an investigation conducted by a Department staff member, who interviewed only Michael Novak and the condo board president (Christina Novak attests that she was never questioned by the investigator, R. 250, Christina Novak Aff. ¶ 11)[5] and who reviewed a few documents provided by Defendants before making a determination of lack of evidence; and (2) the appeal to the Commission, which, as far as can be determined, based its own findings solely on a review of the file compiled by the Department and a "review[]" of "all pleadings," which presumably included the Novaks' Request for Review, the Department's response to that request, and the Novaks' reply to the response. *See* IDHR Determination; IHRC Order at 1. Although it appears the Novaks were free to retain counsel during this process, *see* DSOF, Exh. 5 at 10, IDHR Procedures, there is no indication that they were given the opportunity to conduct discovery, to file briefs or arguments with the Department investigator, or to participate in any

---

[5]The Novaks make much of the fact that the Department investigator did not interview either of them during what the Novaks deem the "investigative phase" of the Department's review—the time period between when the Novaks perfected their charge with the Department (November 9, 2010) and when the Department issued its report (June 30, 2011). *See* R. 252, Pls.'s Resp. Br. at 9; R. 249, PSOF ¶ 21. But in an affidavit attached to the Novaks' Local Rule 56.1 Statement, Michael Novak admits that he *was* interviewed on November 8, 2010 (the day before the Novaks perfected their claim), and that their unperfected charge had been referred to the Department several days before that interview (indeed, it was filed with the Department on November 4, 2010). *See* R. 251, Michael Novak Affidavit, ¶¶ 7-8, 31; IHRC Order at 3. Just because the November 8 interview occurred the day before the Novaks perfected their charge, does not mean that it was not part of the Department's investigation. Indeed, the Department discussed the interview in its report. *See* IDHR Final Invest. Rep. at 3.

13

type of in-person hearing; nor were they given the chance to question witnesses or to object to evidence in an adversarial setting.

Defendants point to the Novaks' Request for Review to the Commission to suggest that the Novaks did have the chance to put forth all of their arguments against the Department's findings and to provide supporting documentation, thus giving the Novaks a "full opportunity to be heard," *see* R. 259, Defs.'s Reply Br. at 3,[6] but filing a Request for Review does not equate to a meaningful opportunity to litigate in a judicial-like setting. By the time the Novaks were able to "fully state[] their arguments," as Defendants assert, the Department had already completed its investigation and made its no substantial evidence determination. There is no suggestion that the Novaks were able (or even invited) to submit arguments and supporting documentation to the Department during its investigation phase; nor is there any indication that the Novaks were able to conduct any sort of discovery, such as issuing written discovery requests, taking depositions, or subpoenaing witnesses before they had to file their Request for Review with the Commission. Most importantly, the Novaks' Request for Review still did not give them the chance to directly confront their adversary—State Parkway. Once the Novaks submitted their Request for Review, which contained their arguments against the Department's findings (which, remember, the Department based solely on a couple of interviews and a review of a few documents), it was *the Department* that

---

[6]Defendants did not raise this argument until the reply brief, and even in the reply, the argument was raised in a context different (though related) from the issue of whether the agency was acting in a judicial capacity; the context in the reply brief was over whether the Novaks had a full and fair opportunity to litigate the issues.

responded to the Novaks' arguments, not Defendants. The Novaks have yet to directly engage with the evidence and the Defendants in an adversarial-like setting.

Defendants also attach a letter between Michael Novak and the Commission, in which the Commission told the Novaks that it was inappropriate for them to file any *ex parte* communications and that the Commission would not consider such communications, *see* DSOF, Exh. 10, but it is not clear how this letter helps Defendants. At best, it suggests that the Commission, like the courts, will not consider arguments presented outside the presence of the opposing party. But this fact does not transform the state-agency proceedings that occurred here into judicial-like proceedings where the Novaks were given the opportunity to meaningfully gather, present, or confront evidence on the dispute.

Moreover, a look at the statutory procedures that applied to the Novaks' claims under the Illinois Human Rights Act confirms that this lack of opportunity was not the result of the Novaks simply declining to avail themselves of judicial tools (which would be a different story), but was instead the result of a lack of judicial-like litigation procedures available under the state's administrative practices. After a fair-housing charge is filed with the Department, Illinois law provides that an investigation shall be carried out, in which—as determined *by the Department*'s representative—pertinent witnesses are interviewed and record-evidence is gathered. 775 ILCS 5/7B-102(C). A "fact finding conference" may be convened (in the Novaks' case, the parties agree one was never held, *see* Def.'s Resp. to PSOF ¶ 22). *Id.* 5/7B-102(C)(5). Once the Department has completed its final

15

report, it must determine whether there is substantial evidence to support the charge. *Id*. 5/7B-102(D)(2). If the answer is yes, a written complaint is prepared and filed with the Commission, at which point any party may elect to pursue the matter in Illinois Circuit Court or proceed to an administrative hearing. *Id*. 5/7B-102(D)(2)(b), 5/7B-102(F), 5/8B-102(A). If the Department makes a finding of no substantial evidence, as happened with the Novaks, the charge is dismissed. *Id*. 5/7B-102(D)(2)(a). The complainant may then appeal to the Commission, filing "written exceptions … supported by argument," which, along with any written responses by other parties, forms the basis of review by a panel of three members who then issue a final decision. *Id*. 5/8B-103(E). Although a party may request oral argument as part of this review, *id*. 5/8B-103(C), there is no provision for presenting evidence during a hearing as part of the appeal to the Commission.

In other words, the Novaks' charge followed a course that never led to a hearing or to the possibility of some other form of quasi-judicial consideration. As just described, under the Illinois Human Rights Act, the only way for that opportunity to be triggered is if the Department's investigation makes a finding of substantial evidence or the Commission, upon review of a no-evidence finding (made solely on the basis of the record compiled by the Department investigator), remands the case back to a Department hearing officer. 775 ILCS 5/8B-103(D). Neither occurred in the Novaks' case, leading to the inescapable result that, as far as the Novaks' current claims are concerned, no administrative agency can be said to have "resolve[d] disputed issues of fact properly before it which the parties have had an

16

adequate opportunity to litigate[.]" *Hamdan*, 425 F.3d at 1059. By the Department investigator's reckoning, the Novaks' charge did not qualify for a judicial-type hearing to even be made available.

Defendants urge that the investigator's no-substantial-evidence findings should be respected as the last word anyway, suggesting without elaboration that they are "akin to [meeting] a motion for summary judgment standard." Defs.' Br. at 4. But it is incongruous to describe the investigator's consideration of a limited record, made without any kind of briefing from the Novaks (or even from State Parkway), as the equivalent of a judicial weighing of a summary-judgment motion. An investigator's preliminary conclusions—made only on the basis of a couple of interviews and a review of a handful of documents, without the opportunity for the presentation of evidence or the cross-examination of witnesses—are simply not entitled to issue-preclusion effect, regardless of the standard applied. Defendants' interpretation of *Allahar v. Zahora*, 59 F.3d 693 (7th Cir. 1995), as supporting the proposition that issue preclusion is proper for administrative proceedings so long as there has been "a hearing *or* factfinding" is simply wrong. Defs.' Br. at 6 (emphasis in original). *Allahar* affirmed the general principle that "[a]gency *decisions* may have a preclusive effect … in the limited area of factfinding," 59 F.3d at 696 (emphasis added), that is, factfinding carried out by an agency acting in a judicial capacity with the requisite litigation-oriented safeguards, including a hearing. *See Hamdan*, 425 F.3d at 1059; *Reed*, 971 F.2d at 1300. An investigator's initial, non-adversarial "finding" is not the same.

Finally, Defendants argue that the Novaks should be required to pursue their appeal of the Commission order with the Illinois Appellate Court, because that is where they initially filed their appeal, rather than be allowed to raise the two issues here. Defs.' Br. at 5-8. This contention is without merit. The Novaks successfully withdrew their petition for review of the Commission order in the Illinois Appellate Court before that court weighed any of the merits of the appeal (indeed, the Novaks withdrew the appeal only a few months after the petition was first filed, before even briefs were submitted). *See* Ill. App. Ct. Order. Defendants call this "forum-shopping for a positive outcome," Defs.' Br. at 6, but they fail to explain why the Novaks' decision to pursue in this Court the two discrete claims at issue (undecided as yet by any proper judicial tribunal) should be seen as a manipulative effort to gain a more favorable forum. Denying their motion and allowing the Novaks to pursue the claims here would be "akin to … enjoin[ing] the effect of an agency order," Defendants continue. *Id*. But as already explained, the Court is not enjoining anything; it is declining to give preclusive, judgment-like effect to investigatory proceedings held without the basic tools of litigation that the Supreme Court and the Seventh Circuit have instructed must be present.

Under the Illinois Human Rights Act, "[a] plaintiff is free to pursue his claim both with the [Department] and in a civil action so long as there has not yet been a hearing on the merits at the administrative level." *Allahar*, 59 F.3d at 696 (citing 775 ILCS 5/10-102(3), (4)). Under federal law too, "[a]n aggrieved person may commence a civil action … whether or not a complaint has been filed

[administratively] and without regard to the status of any such complaint[.]" 42 U.S.C. § 3613(a)(2). Against that flexibility in choosing a remedy, Defendants offer no support for the idea that the Novaks—who, remember, did not have a fact-finding hearing at the administrative level—must be made to pursue the two claims to the end exclusively through an appeal of the Commission order. Their characterization of the Novaks' actions as improper forum-shopping is therefore rejected as well.

## IV. Conclusion

For the reasons discussed above, Defendants' motion for partial summary judgment is denied. With the fate of these two discrete issues resolved and the full scope of the claims in the action now identified and ready to move forward, the parties should focus on completing discovery in an expeditious manner.

ENTERED:

<u>    s/Edmond E. Chang    </u>
Honorable Edmond E. Chang
United States District Judge

DATE: October 29, 2015