IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL NOVAK, CHRISTINA NOVAK, )
and their daughter, T.N., )
)
        Plaintiffs, ) No. 13-cv-8861
)
    v. ) Jeffrey T. Gilbert
) Magistrate Judge
STATE PARKWAY CONDOMINIUM )
ASS'N, THE BOARD OF THE STATE )
PARKWAY CONDOMINIUM ASS'N, )
DONNA WEBER, and LIEBERMAN )
MANAGEMENT SERVS., INC., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendants Lieberman Management Services, Inc., Donna Weber, and The State Parkway Condominium Association (collectively, "Defendants") have moved to compel Plaintiffs Michael Novak, Christina Novak, and T.N. (collectively, "Plaintiffs") to return inadvertently produced documents. Defendants' Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege ("Defendants' Motion"), [ECF No. 421]. For the reasons stated below, Defendants' Motion [ECF No. 421] is granted.

## I. BACKGROUND

On July 11, 2016, Defendants produced roughly 700 pages of documents to Plaintiffs. Defendants' Memorandum of Law in Support of Their Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege ("Defendants' Opening Brief"), [ECF No. 422], at 2; Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege ("Plaintiffs'

Response"), [ECF No. 428], at 1. Later that same day, Plaintiffs emailed Defendants' counsel about that production. [ECF No. 422-2]. In the email, Plaintiffs asked, "Why are so many of your attorney-client communications in this production not redacted? Are your clients waiving attorney-client privilege?" *Id.* at 1. Plaintiffs did not identify by date, subject matter, or Bates-number the documents that were the subject of their inquiry. Defendants did not immediately respond to the email.

Defendants say they subsequently realized that their production on July 11 was incomplete. Defendants' Opening Brief, [ECF No. 422], at 3. Defendants say they determined that a small stack of documents had been "placed to the side during the scanning process." *Id.* So, on July 22, 2016, Defendants reproduced all of the documents they had produced 11 days earlier and, at the same time, produced the additional documents that had been inadvertently set aside and not previously produced. *Id.*; *see also* Plaintiffs' Response, [ECF No. 428], at 2. Defendants reproduced all of the documents, rather than merely the new ones, so they could sequentially renumber the already-produced documents after adding the new ones to the production. Defendants' Opening Brief, [ECF No. 422], at 3.

At some point during the next 10 days, Defendants say they finally had time to compare their productions from July 11 and July 22. *Id.* While doing so, Defendants identified the 41 pages of documents that are the subject of this motion and that Defendants contend had been inadvertently produced. *Id.* The same 41 pages were included in both July productions. *Id.* These are the documents Plaintiffs referenced in their email of July 11, 2016. According to Defendants, the inadvertent production occurred because of a "clerical mistake." *Id.* at 7. Defendants say that, although they prepared redacted versions of the 41 pages, a stack of the

unredacted documents was mixed up with the redacted stack at some point during the production process, leading to the production of the unredacted versions. *Id.*

On August 1, 2016, after identifying specifically which documents were inadvertently produced, Defendants' counsel sent Plaintiffs a letter. [ECF No. 422-1]. In the letter, Defendants' counsel said: "In reviewing documents previously produced to you, we found that several documents had been inadvertently produced that contained privilege materials. These documents are bates[-]stamped with the following ranges: SP015346 - 15357, SP015360 - 15369, SP015376 - 15382, SP015395, SP015410 - 15412, SP015432 - 15436, and SP015440 - 15442." *Id.* In the letter, Defendants asked Plaintiffs to sequester and return the documents. *Id.* Defendants also said they would produce all of the documents in redacted form. *Id.*

Plaintiffs responded later the same day. In their email, Plaintiffs told Defendants' counsel that they "consider waiting at least three weeks to respond to [their] email [from July 11, 2016] . . . constitutes a waiver of attorney-client privilege." [ECF No. 422-2]. Plaintiffs said they wanted to research the issue more and they would "get back to" Defendants' counsel "later [that] month." *Id.*

Plaintiffs and Defendants were unable to resolve their dispute about the return of the inadvertently produced documents. So, on December 30, 2016, Defendants filed a motion to compel their return. Defendants' Motion to Compel Plaintiffs' Discovery and to Reschedule Status, [ECF No. 398]. Plaintiffs filed a "limited response" to the motion just a few days later. Plaintiffs' Limited Response to Defendants' Motion to Compel Plaintiffs' Discovery and to Reschedule Status, [ECF No. 403]. The Court then entered an order stating it could not "decide the waiver issues based upon the skeletal papers, devoid of citation to any case or other authority, that the parties have filed so far on those issues." Order Dated 1/4/17, [ECF No. 406]. The

3

Court denied Defendants' perfunctory motion and set a schedule for the filing of more complete papers to resolve the issue.

Consistent with that schedule, Defendants filed a motion seeking the return of the 41 pages of documents described above, along with a supporting memorandum; Plaintiffs filed a response brief; and Defendants filed a reply brief. Defendants also submitted copies of all of the documents for *in camera* review, as the Court ordered them to do after they suggested the procedure. *See* Minute Entry Dated 1/31/17, [ECF No. 426].[1]

There are two preliminary issues that require some attention. Plaintiffs have filed a motion seeking leave to file a sur-response and attached their proposed sur-response to the motion. Plaintiffs' Instanter for Leave to File a Verified Sur-Response to Defendants' Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege, [ECF No. 434]. The Court has reviewed the proposed sur-response. The brief defends Plaintiffs' right to view certain financial documents unrelated to the inadvertently produced documents, *id.* at 4-6, accuses Defendants of misquoting an order, *id.* at 6, summarizes the status of some FOIA requests and state administrative proceedings, *id.* at 6-7, states Plaintiffs' intent to file a motion to compel, *id.* at 7, notes a supposed deficiency in Defendants' privilege log unrelated to the inadvertently produced documents, *id.*, and says Plaintiffs filed a motion in state court, *id.* Because none of these matters are relevant to the motion now before the Court, the Court denies Plaintiffs' motion to file a sur-response. Even if the Court were to consider that filing, the brief would not alter the Court's analysis and ruling with respect to the present motion.

---

[1] Plaintiffs say they "would like to submit all forty-one (41) pages of disputed (sic) to [the Court] to make sure they match what Defendants' attorneys delivered to [the Court]." Plaintiffs' Response, [ECF No. 428], at 10 n.5. Plaintiffs do not identify any justification, beyond speculation, for concluding Defendants have not submitted the proper documents for *in camera* review. Moreover, the Court's review of the documents has not provided any reason for pause in this regard. Therefore, the Court rejects Plaintiffs' request.

4

Finally, Defendants assert, repeatedly, that the Federal Rules of Civil Procedure "mandate that Plaintiffs should have returned the documents once Defendants asserted the [attorney-client] privilege" in their August 1 claw-back letter. Defendants' Opening Brief, [ECF No. 422], at 10; *see also* Defendants' Reply in Support of Their Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege ("Defendants' Reply"), [ECF No. 433], at 1. But Federal Rule of Civil Procedure 26(b)(5)(B) provides, "After being notified, a party must promptly return, sequester, *or* destroy the specified information and any copies it has." FED. R. CIV. P. 25(b)(5)(B) (emphasis added). That means Plaintiffs did not violate Rule 26 by failing to immediately return the documents.[2]

With that out of the way, the Court can turn to the merits of the parties' dispute.

## II. DISCUSSION

The parties do not dispute that the contents of the inadvertently produced documents satisfy the elements of the attorney-client privilege. *See Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008) ("Under Illinois' definition of the attorney-client privilege, 'where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or by the legal advisor,' unless the protection is waived.") (quoting *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 727 N.E.2d 240, 243 (Ill. App. Ct. 2000)). Instead, the parties disagree about whether: (1) Defendants waived the privilege by failing to take reasonable steps to prevent and then rectify the inadvertent disclosure;

---

[2] The Court is not making any finding as to whether Plaintiffs' description in an unsealed filing of the contents of the documents, *see, e.g.*, Plaintiffs' Response, [ECF No. 428], at 12, violated Rule 26. *See* Defendants' Opening Brief, [ECF No. 422], at 4 ("Plaintiffs . . . have referenced the contents of the documents in pleadings."). Neither party asks for any relief in this regard.

(2) Defendants waived the privilege by asserting advice of counsel as an affirmative defense in this case; and (3) the documents fall within the crime-fraud exception.

### A. Waiver

Under Federal Rule of Evidence 502(b), the disclosure of privileged materials "does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege . . . took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." FED. R. EVID. 502(b). In this case, there is no dispute that the documents Defendants want returned to them were inadvertently produced. The parties disagree, however, about the second and third elements of Rule 502(b). Each will be addressed in turn.

"Determining whether a party took reasonable steps to prevent disclosure and to rectify the error requires considering a variety of factors including the procedures followed to avoid producing privileged material, the volume and timing of the production, and overriding issues of fairness." *Excel Golf Prod., Inc. v. MacNeill Eng'g Co.*, 2012 WL 1570772, at *3 (N.D. Ill. May 3, 2012). There can be no doubt in this case that Defendants took significant steps to prevent the disclosure of privileged information. Before producing the documents at issue, Defendants reviewed them, identified the privileged information, and redacted that information. During the pendency of this litigation, Defendants have used this process to identify more than 1,000 pages of documents containing privileged information in connection with multiple large productions of documents. As such, Defendants' screening process was not only reasonable and sufficient but actually worked in this specific instance. *See Gilday v. Kenra, Ltd.*, 2010 WL 3928593, at *4

(S.D. Ind. Oct. 4, 2010) ("And Kenra took reasonable steps to prevent disclosure by reviewing its documents for privilege before production.").

The cause of the inadvertent production was a clerical error that occurred after the privileged information had been redacted. Someone—it is unclear who— mistook a stack of unredacted documents for a stack of redacted ones and included those documents in Defendants' production. There is no indication that this error was unreasonable. And the "mere fact of a mistaken production does not —in and of itself—establish reasonable precautions were not taken." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 2014 WL 4961490, at *3 (S.D. Ill. Oct. 3, 2014). The clerical error occurred while Defendants were preparing to produce over 700 documents and reviewing more than 3,000 documents. The Court is satisfied that Defendants have shown they took reasonable steps to prevent production of privileged material.

Plaintiffs do not identify what in Defendants' initial production process was unreasonable. Instead, they assert in general terms that "Defendants . . . provided the court with no facts to show [they] took reasonable steps to prevent the disclosure." Plaintiffs' Response, [ECF No. 428], at 9. The Court acknowledges that it would have been helpful if Defendants gave the Court more information about its screening process. But the Court disagrees with Plaintiffs' assertion that Defendants have not presented any facts regarding their screening process. As explained above, Defendants have provided a general description that is sufficient to carry their burden in this case. The fact that Defendants potentially could have made a stronger showing does not justify denying their motion.

The other disputed element of the waiver analysis focuses on whether Defendants took reasonable steps to rectify their inadvertent production. In this case, that inquiry turns on three

questions. The first is whether Defendants acted unreasonably in not discovering the inadvertent production earlier because of Plaintiffs' July 11 email. Plaintiffs' email included five separate paragraphs, each of which addressed a different issue. [ECF No. 422-2.] The third paragraph said, "Why are so many of your attorney-client communications in this production not redacted? Are your clients waiving attorney-client privilege?" *Id.* As Defendants point out, that is all that the email said about the matter. Plaintiffs did not say what led them to conclude the production included attorney-client communications. They did not describe the subject matter of the supposedly privileged documents. And they did not identify the documents, by Bates-number or otherwise.

This left Defendants with a lot of work to do after they received Plaintiffs' email. Defendants had to re-review the entire July 11th production to see what documents had been inadvertently produced. *See Kmart Corp. v. Footstar, Inc.*, 2010 WL 4512337, at *5 (N.D. Ill. Nov. 2, 2010) ("Therefore, once Liberty Mutual became aware of the letters and emails, we think Liberty Mutual was required to look into other possible errors in this production."). Defendants decided to first focus on producing the documents left out of the July 11 production, while also reviewing thousands of other documents. Only after they corrected their deficient production on July 22nd did Defendants prioritize the task of identifying what privileged documents had been produced, and, presumably, reassessing whether they were privileged and could be clawed-back. That process took roughly one week, resulting in the August 1 claw-back letter. The Court does not find that so unreasonable as to justify a finding of waiver.

In assessing whether Defendants should have dropped everything and immediately focused on identifying the inadvertently produced documents (or asked Plaintiffs to identify by Bates-number the documents they were talking about, or asked Plaintiffs simply to return them),

it is important to consider the specific facts of this case. Plaintiffs, who are proceeding *pro se*, in the course of pursuing this case over the past three years, have sent many, many emails to Defendants and their attorneys accusing them of engaging in a host of activities that Plaintiffs label as misconduct including allegations that Defendants' counsel have failed to comply with their professional obligations in this lawsuit. The various attachments to motions and the parties' statements during in-court hearings indicate as much. The relatively short July 11th email, for instance, said: "The production that was produced today is still woefully inadequate," "The production thus far show[s] your clients committed perjury in state court," and "We will also prove your clients are lying with respect to the audio and video recordings." [ECF No. 422.]

Further, in the lead-up to the parties' recent meet and confer about discovery issues, Plaintiffs sent Defendants a number of emails. *See, e.g.*, [ECF No. 432-4.] One of them ran to 10-pages and identified numerous supposed problems with Defendants' discovery responses, including that Defendants were lying in some of their responses. *Id.* at 2-11. The Court does not find it was unreasonable for Defendants to prioritize the completion of their production of documents with a discovery closure looming before they responded to Plaintiffs' email. Defendants did not ignore Plaintiffs' email indefinitely or leave the attorney-client issue unaddressed and unresolved. Rather, they completed a few other tasks that helped to move this case forward and then, within less than three weeks of receiving Plaintiffs' email, identified the inadvertently produced documents and sent Plaintiffs a claw-back letter. Considering the specific facts and circumstances of this case, as is appropriate when determining whether a party acted reasonably, the Court is not convinced that Defendants' failure to immediately respond to Plaintiffs' email means Defendants did not take reasonable steps to rectify their error.

Plaintiffs contend that, because Defendants had not yet dealt with the inadvertent production issue, it was unreasonable for them to reproduce the July 11 documents with the July 22 production. But the Court does not see any harm that could have been done by reproducing documents on the 22nd that Plaintiffs already had in their possession because of the production on the 11th. Plaintiffs received two copies of the same potentially privilege documents instead of one. Therefore, in light of the particular facts and circumstances of this case, the Court is not convinced Defendants acted unreasonably in this regard.

Plaintiffs also say Defendants acted unreasonably by not filing a motion to compel the return of the documents sooner than they did. To recap the basic facts, Defendants identified the inadvertently produced documents sometime between July 22 and August 1, sent a claw-back letter on August 1, and filed a motion raising the issue on December 30. The Court finds Defendants' decision to send a claw-back letter, rather than immediately file a motion, was reasonable. *See Kmart*, 2010 WL 4512337, at *5 ("If it discovered that letters containing confidential attorney-client communications were disclosed, a reasonable step would be to file a motion within a matter of days. In the alternative, Liberty Mutual could have promptly sent a letter to Kmart claiming the privilege . . . .").

Moreover, Defendants could not have filed a motion at that time if they had wanted to do so. On July 26, 2016, the Court entered an order stating: "No party will be permitted to file a motion to compel or motion for a protective order addressing written discovery issues until after 9/23/16." Minute Entry dated 7/26/16, [ECF No. 360.] In the same order, the Court set a Rule 16 Conference for September 23. *Id.* But the Court eventually struck that conference and determined "there [was] no need for an in-person hearing or conference" at that juncture. Minute Entry Dated 9/20/16, [ECF No. 379]; Order Dated 12/5/16, [ECF No. 391].

It seems that Defendants did not file a motion to compel the return of the inadvertently produced documents between September 23 and December 30 because they misinterpreted the Court's July 26 Order. Defendants represent that they read the order to prohibit the filing of any motion to compel until some indefinite time after September 23 when the Court gave permission at a Rule 16 Conference or otherwise. *See* Defendants' Reply, [ECF No. 433], at 2-3. There is at least some basis for Defendants' misunderstanding. The Court entered its order of July 26 because it was taking the parties too long to produce documents each had requested of the other, and it wanted to focus the parties on producing all of the documents they were going to produce without objection before dealing with their objections to individual production requests. Defendants say they did not know that they could file a motion to compel the return of the inadvertently produced documents until the Court's orders in early December 2016, granting both parties leave to file motions to compel by December 30, 2016. Order Dated 12/5/16, [ECF No. 391]; Minute Entry Dated 12/8/16, [ECF No. 395]. Under these circumstances, the Court does not find that Defendants' delay in filing a motion seeking the return of the documents justifies a finding that they waived the attorney-client privilege.

For all of these reasons, the Court finds Defendants have not waived the attorney-client privilege by inadvertently producing the 41 pages of privileged documents.

### B. Reliance on Advice of Counsel

Plaintiffs say the documents in issue, which contain attorney-client communications, are subject to production because Defendants have invoked reliance on advice of counsel as an affirmative defense in this case. "A party waives the attorney-client privilege when it 'relies specifically on advice of counsel to support a claim or a defense' and it intends to prove that claim or defense by using privileged communications." *Franklin United Methodist Home, Inc. v.*

*Lancaster Pollard & Co.*, 909 F. Supp. 2d 1037, 1047 (S.D. Ind. 2012) (quoting *Harter v. University of Indianapolis*, 5 F. Supp. 2d 657, 664 (S.D. Ind. 1998)). "'Only when the client seeks to take advantage of the privilege communications themselves should a waiver be found on the theory that the client has put the attorney's advice in issue.'" *Id.* (quoting *Harter*, 5 F. Supp. 2d at 665). "Stated differently, a party cannot assert reliance on advice of counsel, but then assert the attorney-client privilege to shield the disclosure of that advice." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2015 WL 5123652, at *4 (N.D. Ill. Sept. 1, 2015). "[A]ny waiver implied by an advice of counsel defense is limited to communications and documents on the same subject matter relating to the legal advice relied upon." *Rojicek v. River Trails Sch. Dist. 26*, 2003 WL 1903987, at *3 (N.D. Ill. Apr. 17, 2003).

In their answer, Defendants plead an affirmative defense of reliance on advice of counsel: "To the extent that any of the alleged wrongs were committed after the Association Defendants reasonably relied in good faith on the advice of counsel, any and all claims are barred as against the Association[] Defendants in their entirety." [ECF No. 130], at 25. According to Defendants, however, the inadvertently produced documents do not relate to the legal advice upon which they allegedly relied as referenced in their affirmative defense. Defendants correctly note that all of the documents now in dispute, which date from 2014 and 2015, were created <u>after</u> Plaintiffs filed the operative complaint in this case in December, 2013. As a result, Defendants say, the documents "inherently cannot reflect advice or guidance relied upon by the Defendants prior to the filing of Plaintiffs' allegations in the operative complaint." Defendants' Opening Brief, [ECF No. 422], at 8. Thus, Defendants disclaim any intent to rely on anything contained in the inadvertently produced documents to support their reliance on advice of counsel defense.

12

In response, Plaintiffs concede that asserting a reliance on advice of counsel defense only waives "the attorney-client privilege with respect to all communications . . . *concerning the transactions for which counsel's advice was sought.*" Plaintiffs' Response, [ECF No. 428], at 12. Plaintiffs contend that, since the filing of the complaint, Defendants have continued to violate the Fair Housing Act. But Plaintiffs do not identify any allegation in the operative complaint that relates to the conduct discussed in the inadvertently produced documents.

Plaintiffs also assert Defendants have not produced any attorney-client communications that they relied upon. This fact, even if true, does not mean Defendants have or will claim that they relied on legal advice contained in or related to the inadvertently produced documents. If Defendants have not produced *other* attorney-client communications related to legal advice upon which they relied, that may impact their ability to argue that their reliance is a defense to Plaintiffs' claims. *See DR Distributors*, 2015 WL 5123652, at *4. But that issue, about which the Court makes no finding at this time, does not affect whether Defendants waived the attorney-client privilege with respect to the inadvertently produced documents.

Based on Defendants' representation that they are not asserting as a defense in this case that they relied on legal advice contained in or related to the inadvertently produced documents, and Plaintiffs' failure to rebut that representation, the Court finds Defendants have not waived the attorney-client privilege with respect to the inadvertently produced documents by asserting a reliance on advice of counsel defense.

### C. Crime-Fraud Exception

Plaintiffs also argue that the documents in question must be produced under the crime-fraud exception to the attorney-client privilege. "The crime-fraud exception places communications made in furtherance of a crime or fraud outside the attorney-client privilege."

13

*United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007). "The exception's purpose is to ensure that the confidentiality afforded to communications between attorney and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 447 (7th Cir. 2011) (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)) (internal quotation marks omitted). "In order for the crime[-]fraud exception to drive the privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact." *United States v. Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2007) (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933)) (internal quotation marks omitted).

Plaintiffs claim Defendants "have engaged in a massive fraud, deceptive business practices, oppression and misapplication or wasting of assets." Plaintiffs' Response, [ECF No. 428], at 13. Defendants' crimes, according to Plaintiffs, include, but are not limited to, "criminal federal and state tax evasion, financial reporting fraud, reserve study fraud, engineer's unit fraud, budget fraud, life safety evaluation report fraud, declaration fraud, and insurance fraud." *Id.* These are the crimes Plaintiffs say justify the application of the crime-fraud exception.

There are two problems with Plaintiffs' argument. The first is that they do not make in their briefs the required *prima facie* showing as to the alleged crimes to which they refer. Instead, they say the crimes are "detailed in Mr. Novak's 197-page *Verified* Memorandum of Law that was filed in state court." *Id.* "Judges are not like pigs, hunting for truffles buried in [the record]." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) (internal quotation marks omitted). It is not the Court's job to review a 197-page filing in another court to construct the *prima facie* case Plaintiffs have failed to make.

The other issue with Plaintiffs' argument is more fundamental. At Defendants' suggestion, the Court ordered Defendants to submit the inadvertently produced documents for *in camera* review. The Court has thoroughly reviewed them. None of the documents relates in any way to the type of financial crimes that Plaintiffs say occurred. They deal with entirely different subject matters. As such, there is absolutely no basis for concluding that the documents constitute "communications *made for the purpose* of getting advice for the commission of" the crimes Plaintiffs claim justify the application of the crime-fraud exception. *Shaffer*, 662 F.3d at 447 (7th Cir. 2011). That means the crime-fraud exception does not apply to the documents.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Instanter for Leave to File a Verified Sur-Response to Defendants' Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege [ECF No. 434] is denied, and Defendants' Motion to Compel Plaintiffs to Return Documents Protected by Attorney-Client Privilege [ECF No. 421] is granted. On or before March 23, 2017, Plaintiffs must (1) return to Defendants the original copies of the documents Bates-stamped SP015346–15357, SP015360–15369, SP015376–15382, SP015395, SP015410–15412, SP015432–15436, and SP015440–15442 that Defendants produced to Plaintiffs; and (2) destroy any copies Plaintiffs have made of those documents. If Defendants have not already produced to Plaintiffs redacted copies of the inadvertently produced documents, they must do so on or before March 23, 2017.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 20, 2017